Eston L. COOPER, a/k/a Jack Cooper, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17165.

Court of Criminal Appeals of Oklahoma.

April 18, 1973.

Rehearing Denied June 18, 1973.

Jerome Sullivan, Jr., Sullivan & Sullivan, Duncan, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Eston L. Cooper, a/k/a Jack Cooper, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Stephens County, Case No. CRF–70–157, for the offense of Shooting With Intent to Kill. His punishment was fixed at two (2) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

The State's evidence showed that on the afternoon of December 14, 1970 the defendant was observed shooting a pistol in his back yard at Marlow, Oklahoma. The police were notified and Officers Crownover and Abney went to the defendant's home to investigate. Defendant admitted test-firing the pistol but said it was none of the officers' business. Defendant began using abusive language at them and was placed under arrest because of the profane language. The defendant was charged with Firing a Weapon in the City Limits and subsequently posted a Twenty-Dollar bond and was released.

About 6:45 on the same day, the police received another report from two of the defendant's neighbors that they heard shots fired and saw the defendant with a pistol. Officers Lothridge and Crownover went to defendant's home to investigate the second shooting incident. Upon arriving at defendant's residence, they were informed by defendant's wife that they had better not see the defendant at that time because he was still mad about his arrest earlier that afternoon. Officer Crownover stated that they intended to talk to the defendant and, if necessary, they would get a warrant. At this point, defendant's wife opened the door wide and stepped to one side. The officers observed defendant sitting in a chair with a pistol pointed at them. The officers demanded that defendant put his pistol down, but defendant refused to do so. The officers thereupon drew their guns and repeated the request several more times. The defendant then fired two shots while sitting in his chair. Both officers fired at the defendant trying to hit his gun hand. The defendant got out of the chair and charged toward the door still firing. The defendant emptied his gun and slammed the door shut. The officers radioed for additional aid.

The testimony of Officers Lothridge and Crownover as to the details of the occurrences did not differ substantially.

Shortly thereafter, Deputy Sheriff Benson arrived on the scene and was ultimately permitted entrance into the house. Defendant put the pistol on the table and Deputy Benson unloaded it. He testified that the defendant had a smell of alcohol about his person, his face was red, and his tongue "seemed real thick when he was trying to talk." (Tr. 20)

For the defense, Martha Cooper, the defendant's wife, testified that Officers Crownover and Abney came to their residence at approximately 4:00 on the afternoon in question. Crownover grabbed her husband by his arm and pulled him out into the yard. She proceeded to the police station and posted a Twenty-Dollar bond. They returned home and later that evening, Officers Crownover and Lothridge knocked at the front door. She answered the door and Crownover said, "Get Jack out here on the porch, I want to talk to him." (Tr. 180) She told Crownover that, "I don't think you should talk to him, he's still a little angry with you as you well know for jerking him around this afternoon and jerking him out the back door." Crownover replied, "Well, he's going to come out here on this back porch and I'm going to talk to him." Crownover tried to jerk the screen door open which was locked. He then grabbed his gun and fired into the latch. He then fired at her husband. Her husband returned the fire and told her to "get on the phone and call the sheriff." (Tr. 183)

Defendant testified that Officers Abney and Crownover came to his home that afternoon. They jerked him around violently, knowing that he had recently been involved in an automobile accident, and took him to the police station. He posted a bond for Shooting a Firearm Within the City Limits. At about 6:45 p. m., Officers Crownover and Lothridge came to his house. His wife answered the door and would not let them inside the house. Crownover pulled on the screen door and upon finding it locked, fired at the lock. When the officers fired a second shot, he picked up his pistol and started firing in their direction to scare them away. He testified that he was not shooting to hit anybody. He admitted prior convictions for forgery and burglary in 1957.

Defendant asserts two propositions of error: That the trial court erred in sustaining the State's objection to the offer into evidence of a certified copy of the city ordinances of Marlow dealing with discharging a firearm in the city limits, and that the trial court erred in instructing the jury by giving Instruction No. 4 and refusing defendant's Requested Instructions No. 8 and 9.

Defendant asserts two propositions of er-the charge of Shooting with Intent to Kill was that the Marlow City Police Officers, in coming to his home, without a warrant for his arrest and also without having viewed the alleged offense for which they came out there, to-wit: Discharging of Firearms, was that the Officers were trespassing at his home; that he, sought to be arrested, was not obligated to submit to arrest, and such arrest was an illegal one; that he had a right to resist such arrest or attempted arrest by the Officer and that what he did thereafter, by reason of the Officer's actions, was in self-defense of himself and of his wife."

We observe that there is no evidence in the record to adduce that the police officers went to defendant's residence to arrest the defendant for a violation of the city ordinance. The officers testified that they went to the defendant's residence to investigate the shooting incident and wanted to talk to the defendant. When the defendant's wife refused to allow them to talk to her husband, Officer Crownover stated that they intended to talk to him "even if they had to secure a warrant." (Tr. 122) At that point, according to the officers' testimony, the defendant's wife pushed the door wide open and the defendant started shooting at them. The testimony of the defendant and his wife adduced that the police officers came to their house and stated that they wanted to talk to the

defendant. When defendant's wife refused to allow this, Officer Crownover fired his weapon into the door latch and then started shooting at the defendant. The defendant thereupon fired several shots through the screen door to scare them away. It is thus apparent that the ultimate question of fact to be decided by the jury was not whether the defendant was resisting an unlawful arrest but rather whether or not the defendant was acting in self-defense. We, therefore, are of the opinion that the trial court did not err in refusing admission of the certified copy of the municipal ordinance and further that the trial court did not err in refusing defendant's requested instructions concerning the right to resist an unlawful arrest. We further observe that the court's Instruction No. 4, which stated: "You are instructed that for the purpose of preserving the peace and to prevent crime, a peace officer or a private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed" was proper. In Hargus v. State, 58 Okl.Cr. 301, 54 P.2d 211, we stated:

"* * * It is not the law that a peace officer or any other person, if he makes an inquiry of any person, not having at the time a warrant, does so at the peril of death. In this modern time, when automobile travel permits persons to cover long distances in a short time, it is not unlawful for a peace officer, nor for a private citizen, to make a reasonable inquiry of strangers or others and at the least a mere accosting or inquiry does not permit the person so accosted, in the absence of a reasonable apprehension of immediate danger, to open fire and then justify on the ground the officer or citizen was without authority. * * *"

The trial court gave four instructions covering in detail the theory of self-defense including the right to defendant's domicile against an unlawful invasion. We thus conclude that the trial court's instructions taken as a whole correctly stated the law applicable to the issue presented by the evidence. The jury chose to believe the evidence of the State's witnesses and not the evidence of defendant's witnesses.

The judgment and sentence is affirmed.

BLISS, P. J., concurs and BRETT, J., dissents.

BRETT, Judge (dissents):

I respectfully dissent to this decision, because I believe the trial court committed error when defendant's Exhibit 17 was not admitted into evidence and because the jury was not fully instructed.

The purpose of the exhibit was to show the jury that the alleged offense was not any more than a misdemeanor offense; and that the officers were on defendant's property without proper authority, beyond their general authority to investigate an alleged incident.

The Attorney General argues that the municipal ordinance, offered as defendant's Exhibit No. 17, was irrelevant and immaterial to the issues of the trial; and notwithstanding the provisions of 12 O.S.1971, § 493, the Marlow City Ordinance was inadmissible in evidence. Section 493 provides:

"Printed copies of any of the ordinances, . . . of any city or incorporated town in this State, purporting to be published by the authority of such city or incorporated town or manuscript copies of the same, certified under the hand of the proper officer, and having the corporate seal of such city or town affixed thereto *shall* be received as evidence." (Emphasis supplied)

The theory of defense was that the police officers were trespassers at defendant's home, insofar as no complaint had been signed and no warrant issued; therefore, the officers being trespassers, defendant was not obligated to submit to an illegal arrest, and possessed a right to resist such illegal arrest in self-defense of himself and his wife.

When defendant offered his Exhibit No. 17, the State objected, but offered no reasons for the objection; nonetheless, the court summarily sustained the State's objection. So, defendant proffered into evidence the ordinance, which proffer was denied allowing defendant his exceptions.

The ordinance was the basis for defendant's theory of defense; and it served as the predicate for the officer's presence at defendant's home. When this fact is considered along with the court's second instruction, it becomes clear to me that the jury was not properly instructed.

The court's instruction number two provided the following:

> "You are instructed that the laws of the State of Oklahoma provide as follows:
>
> 'Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearem [sic], airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another, *or in resisting the execution of any legal process*, is punishable by imprisonment in the penitentiary not exceeding twenty (20) years.' " (Emphasis supplied)

Notwithstanding the fact that the court's instruction was generally correct, as stating essentially what the statute recites, none of the instructions informed the jury that the officers were making inquiry was one of the nature which required the issuance of a warrant, premised upon a signed complaint; and, notwithstanding the fact that the officers may have the right to investigate reports or disturbances without a warrant being issued, their authority is limited to making inquiry in misdemeanor or municipal offenses, unless the offense was committed in their presence. In the instant case, the offense was admittedly not committed in the officers' presence; and they both testified that no complaint had been signed, and no warrant had been issued. When Mrs. Cooper informed the two officers that the defendant did not want to talk to them, the officers should have done what they threatened to do— withdraw and obtain a warrant for defendant's arrest.

The court's instruction number two informed the jury in such a manner as to leave the impression that the officers were executing legal process, and that defendant was "resisting the execution of legal process"; and that the officers were completely in the right. That was not the case. When the officers were informed that the defendant did not want to talk to them, the officer's authority ceased, absent the warrant. I therefore conclude that the jury instructions were improper, insofar as defendant's theory of defense was not clearly offered for the jury's consideration.

In Jones v. State, 77 Okl.Cr. 285, 141 P.2d 109 (1943), this Court recited:

> "The law is well settled that instructions given to a jury must be adapted to the evidence and circumstances of the case on trial. To give instructions, even though they contain a correct statement of abstract legal principles, which are prejudicial will warrant a reversal of a judgment of conviction, and constitutes error." At page 117 of 141 P.2d.
>
> *  *  *  *  *  *
>
> "Fundamental error is error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense. Where it appears and justice requires, this court will consider it whether or not exceptions are taken in the court below or whether or not it be assigned as error on appeal." At page 118 of 141 P.2d.

I therefore take the position that defendant did not receive such a trial as due process of law requires; and therefore, this conviction should be reversed and remanded for a new trial.

For the reasons herein stated, I respectfully dissent.