PEOPLE v PALMA

Docket No. 47000. Submitted October 6, 1981, at Lansing.—Decided
December 15, 1981.

Louis J. Palma was arrested after the car in which he was riding
as a passenger was stopped by a City of Wayne police officer
after the car was observed speeding and weaving across lane
dividers. When the police officer observed the car, he was
responding to a "trouble with a man" and possible "destruction
of property" call. At the time the car was stopped, it had
crossed the city limits into Washtenaw County. The Wayne
police officer radioed for assistance from the Washtenaw
County Sheriff's Department. The driver of the car and defen-
dant were then informed of the reasons for the stop: driving
under the influence of alcohol and possible destruction of
property. Another Wayne police officer arrived on the scene
and asked defendant for identification. Defendant thereupon
began fighting with the officer. The two Wayne officers then
handcuffed and placed defendant in the back of one of their
patrol cars, and, when deputies from the Washtenaw County
Sheriff's Department came upon the scene, the Wayne officers
requested that the deputies take custody of defendant on the
basis that defendant had been drinking, had assaulted one of
the Wayne officers and that defendant could be dangerous to
himself and others. The deputies agreed to take custody of
defendant, and, in attempting to transfer defendant to their
car, were allegedly assaulted by defendant. Defendant was
charged in Washtenaw Circuit Court with knowingly and wil-
fully obstructing, resisting, or opposing arrest. He was con-
victed by a jury and sentenced to 90 days in jail, Francis D.
Ross, J. Defendant appeals. *Held:*

1. Defendant's arrest was lawful.

2. The trial court did not err in omitting from instructions on
self-defense that the prosecution had the burden of proof that
the defendant was not acting in self-defense. The defendant did

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 50, 81.
[2] 5 Am Jur 2d, Arrest §§ 26, 28.

not request such an instruction and the instructions, taken as a whole, were fair.

3. The record does not support defendant's claim that the court erred in omitting from its instructions concerning resistance to an arrest the specific identification of the crime for which defendant was arrested.

Affirmed.

1. ARREST — POLICE — PURSUIT FROM CITY — SHERIFFS AND CONSTABLES — REASONABLE FORCE.

City police may pursue a violator outside the city limits in order to make an arrest and in doing so are clothed with the authority of a sheriff; the police have the right to use that force reasonable under the circumstances to effect such an arrest and the police also may take what action is reasonable to protect themselves in the course of an arrest or an attempted arrest (MCL 117.34, 764.2a; MSA 5.2114, 28.861[1]).

2. ARREST — MISDEMEANORS — THIRD PERSONS.

A police officer without a warrant can arrest a person for a misdemeanor only if the misdemeanor is committed in his presence or the arrest is based on information supplied by other police officers who are working with the arresting officer; if the basis of the arresting officer's belief that the accused has committed a misdemeanor is imparted to him by some other third person, he must present the evidence to a magistrate and seek an arrest warrant (MCL 764.15; MSA 28.874).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *James S. Sexsmith,* Assistant Prosecuting Attorney, for the people.

*James L. Florey,* for defendant on appeal.

Before: ALLEN, P.J., and M. J. KELLY and J. J. KELLEY,* JJ.

J. J. KELLEY, J. Officer Prill, a City of Wayne police officer, was proceeding to a Shell gas station in Wayne on a "trouble with a man" and possible "destruction of property" call. Since Officer Prill's

* Circuit judge, sitting on the Court of Appeals by assignment.

car was not the closest police car to the gas station, the officer started following two individuals in a burgundy and silver Pontiac, having recognized the car from a previous radio communication regarding the gas station incident. The officer observed the suspects' car going 70 m.p.h. in a 55 m.p.h. zone, weaving across lane dividers, and accelerating to over 90 m.p.h. When the fleeing vehicle entered Washtenaw County, Prill radioed the Washtenaw County Sheriff's Department for assistance.

Believing there to be an "immediate threat to life and property" due to the aforementioned erratic and dangerous driving, and on the basis of a possible crime having occurred at the gas station, Officer Prill made a traffic stop of the vehicle. The driver, Timothy O'Hagan, and the passenger, defendant Palma, were informed of the reasons for the stop, to-wit, driving under the influence of alcohol and possible destruction of property at the gas station. Upon the driver's exiting from the vehicle, the officer believed him to be intoxicated because of his slurred speech, the smell of intoxicants emanating from him, and the fact that the driver could not stand erect but was weaving from side to side.

Officer McIntyre from the Wayne City Police arrived, having been called to assist Prill in his pursuit of the suspects. Officer McIntyre asked defendant for identification in order to gain information for the police report and to identify defendant in the event that a crime had been committed. When McIntyre asked for the identification, defendant started rolling up his window. The officer then reached inside the window, pulled up the door lock, opened the door, put his hand out for the requested identification and repeated that he

was investigating a possible destruction of property, saying, "All I want to do is see some identification. If there is nothing wrong you're free to go on your way." McIntyre testified:

"*Q.* Did Mr. Palma say anything at this point?

"*A.* He laughed, looked up at me and said, 'f___ you, pig, you don't have any right being here.

"*Q.* Okay. What happened then?

"*A.* At that point there was another person in the defendant's vehicle—the driver of the vehicle. He reached over and I thought it was to strike me, and he grabbed my left arm and started pulling me into the vehicle.

"*Q.* What did Mr. Palma do?

"*A.* Mr. Palma turned his back toward the driver of the vehicle, braced himself against the driver, and began to kick me in the groin.

"*Q.* What happened then?

"*A.* I started fighting with Mr. Palma and got him out of the car, and we were wrestling on the ground for several minutes."

After defendant had been handcuffed and placed in the patrol car, he began kicking the screen and windows, yelling, and calling the officer abusive names. On the basis of the foregoing, and concluding that the defendant could be dangerous to himself and others, had been drinking, and had assaulted Officer Prill, the Wayne City police officers requested that defendant be taken into custody by Deputies Williams and Milligan of the Washtenaw County Sheriff's Department, who had arrived at the scene.

Informed of the foregoing, the deputies attempted to transfer defendant to their vehicle. Defendant resisted and would not move under his own power. He kicked Williams in the groin, upper thigh, and wrist, breaking his watch. He

also kicked Milligan very forcefully in the thigh at least four times, swung at him, threatened him and showered him with racial slurs.

The defendant testified that he had been drinking for approximately 11 hours, that he had a drinking problem, and that all he remembered about the altercation was having a shot of tequila and vodka before leaving the bar, and then, "My head—on the side of a police car."

The trial judge instructed on the applicable law, including intoxication and self-defense. The jury returned a verdict of guilty. Defendant appeals, raising three issues.

## I. Was the Defendant's Arrest Lawful?

The Wayne City police officers suspected that the occupants of the car involved had committed a crime within the city. Their pursuit and detention of the defendant was justified under MCL 117.34; MSA 5.2114:

"When any person has committed or is suspected of having committed any crime or misdemeanor within a city, or has escaped from any city prison, the police officers of the city shall have the same right to pursue, arrest and detain such person without the city limits as the sheriff of the county."

During the pursuit, one of the Wayne City police officers radioed the Washtenaw County Sheriff's Department for assistance. At that point MCL 764.2a; MSA 28.861(1) became applicable:

"A peace officer of a county, city, village, or township of this state may exercise authority and powers outside his own county, city, village, or township, when he is enforcing the laws of this state in conjunction with the

Michigan state police, or in conjunction with a peace officer of the county, city, village, or township in which he may be, the same as if he were in his own county, city, village, or township."

The Wayne City officers were justified in making an investigation. The defendant's obstruction of that activity, his apparent intoxication, his endangering the safety of a police officer and his assault upon a police officer justified his arrest under MCL 117.34; MSA 5.2114, *supra,* or the disorderly person statute, MCL 750.479; MSA 28.747, or both.

As the Court observed in *Delude v Raasakka,* 391 Mich 296, 302-303; 215 NW2d 685 (1974):

"We should not say to police officers that they should pursue law violators beyond their local governmental bounds but, if there is a breach of peace or if they are assaulted or if the suspect resists arrest, that they cannot arrest for those violations or call for help for fear that those called will be prosecuted. Such a finding would most certainly result in lax law enforcement. Offenders of all degrees might be expected to head for a governmental unit's limits as they now head for the state line."

The arrest statute, MCL 764.15; MSA 28.874, permits a police officer without a warrant to arrest for the commission of any felony or misdemeanor committed in his presence. Under the "police team" theory, adopted by the Court in *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), police officers without a warrant may arrest for a misdemeanor based on information supplied by other officers:

"When the basis of the officer's belief that the defendant has committed a misdemeanor is information imparted to him by, say, victims, witnesses or informers,

he must present the evidence to a magistrate and seek an arrest warrant. * * *

"Another police officer is not a third person within that policy. Courts in other jurisdictions have developed a 'police team' qualification of the presence requirement, permitting officers who are working together on a case to combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness all the elements of the offense." (Footnote omitted.) *Id.*, 697-698.

The Wayne City officers acted lawfully in pursuing and detaining the defendant. The deputies acted lawfully in transferring the defendant to their patrol car and in arresting him for his resistance to and assault upon Deputy Williams during the transfer.

## II. DID THE COURT ERR IN OMITTING FROM INSTRUCTIONS ON SELF-DEFENSE THAT THE PROSECUTION HAD THE BURDEN OF PROOF THAT THE DEFENDANT WAS NOT ACTING IN SELF-DEFENSE?

The defendant did not request this instruction. Included among the instructions were the following, which adequately put the jury on notice that the prosecution had to prove beyond a reasonable doubt that the defendant did not act in self-defense:

"You must begin your deliberations with the presumption of innocence foremost in your minds. The fact that the defendant was arrested and is on trial is no evidence against him. There must be evidence introduced in this trial that convinces you of the defendant's guilt beyond a reasonable doubt. The law does not require a defendant to prove his innocence or to produce any evidence whatsoever. The burden of proving guilt is upon the prosecution and this is throughout the

entire course of the trial and at no time does the burden of proof shift to the defendant.

"This burden of proof means that every element of the crime charged must be proven by the evidence beyond a reasonable doubt."

Neither side objected to the giving or failure to give any instruction. Taken as a whole, the instructions were fair. *People v Hunley,* 313 Mich 688; 21 NW2d 923 (1946). *People v Brown,* 34 Mich App 45; 190 NW2d 701 (1971).

### III. DID THE COURT ERR IN OMITTING FROM ITS INSTRUCTIONS CONCERNING RESISTANCE TO AN ARREST THE SPECIFIC IDENTIFICATION OF THE CRIME FOR WHICH THE DEFENDANT WAS BEING ARRESTED?

The record does not support this claim. The trial judge specifically told the jury:

"It is the claim of the people that the defendant knowingly, wilfully and unjustifiably resisted and opposed Deputy Ernest Milligan when he was attempting to lawfully arrest and transport the defendant for his assault upon Officer Robert McIntyre."

Affirmed.