PEOPLE v MEYER

Docket No. 73672. Argued June 4, 1985 (Calendar No. 5).—Decided
December 30, 1985.

Paul E. Meyer was charged in the Kalamazoo Circuit Court with
the delivery of less than fifty grams of cocaine. The defendant
moved for a hearing on the defense of entrapment, and, while
testimony was being heard in support of the motion, the court,
John E. Fitzgerald, J., sua sponte, dismissed the case, finding
that an undercover police officer who had purchased cocaine
from the defendant had acted outside his bailiwick, without the
cooperation of local authorities or the State Police, and thus
was functioning without legal authority or power as a law
enforcement agent. The Court of Appeals, MacKenzie, P.J.,
and Megargle, J. (J. H. Gillis, J., dissenting), affirmed (Docket
No. 67347). The people appeal.

In an opinion by Justice Ryan, joined by Chief Justice
Williams, and Justices Brickley, Cavanagh, Boyle, and
Riley, the Supreme Court *held:*

An undercover police officer who engages in an illegal drug
transaction outside his bailiwick without the cooperation of
local authorities or the State Police is not disqualified from
filing a criminal complaint against the person with whom he
dealt or from testifying against the person in subsequent judi-
cial proceedings; nor do the officer's actions entitle the defen-
dant to dismissal of criminal charges resulting from the com-
plaint.

1. A police officer may not exercise authority outside his
bailiwick unless he is enforcing the laws of the state in conjunc-

---

REFERENCECS FOR POINTS IN HEADNOTES

[1, 2, 4] Am Jur 2d, Criminal Law § 209.
  Am Jur 2d, Sheriffs, Police, and Constables § 27.
  Validity, in state criminal trial, of arrest without warrant by
    identified peace officer outside of jurisdiction, when not in fresh
    pursuit. 34 ALR4th 328.
[2] Am Jur 2d, Searches and Seizures §§ 56, 102.
[3] Am Jur 2d, Criminal Law §§ 408 *et seq.*
  See the annotations in the ALR3d/4th Quick Index under Arraign-
    ment; Preliminary or Pretrial Matters.
[4] Am Jur 2d, Prosecuting Attorneys §§ 23-29.

tion with local authorities or the State Police or is acting within the provisions of the hot pursuit statute. In this case, while the officer's actions were not undertaken in conformity with statutory authority, they do not entitle the defendant to dismissal of the charges against him. The officer participated in an illegal drug transaction with the defendant and later swore to and filed a complaint against the defendant and testified at the defendant's preliminary examination. The conduct was not so outrageous as to preclude the invocation of judicial process on the basis of a due process violation.

2. The correct focus in this case is on the legality of the officer's filing the complaint against the defendant and testifying at the preliminary examination. No authority was shown which would disqualify the officer. The statutory provisions for issuing a warrant in a criminal case do not require that the complainant be acting legally at the time an offense occurs. Nor do the statutes authorizing the binding over of a defendant following preliminary examination or providing for the examination of witnesses for or against a defendant at a preliminary examination require that the complainant or any witnesses be acting without a taint of illegality concerning the commission of the offense.

Justice LEVIN, concurring, agreed that the remedy for violation of the statute authorizing a police officer to exercise authority outside his bailiwick is neither barring the officer from signing a complaint or testifying at all nor dismissal of the prosecution. The nature and extent of undercover surveillance activity is a matter for decision primarily by the community in which the activity takes place. What might be thought appropriate in one community might not be thought so in another. While the prosecutor ultimately decides whether to prosecute, a police officer may not properly undertake covert activity outside his own bailiwick without prior authorization by an officer responsible to the citizenry of the locality in which the activity is to occur.

Reversed and remanded.

131 Mich App 812; 346 NW2d 878 (1983) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW — POLICE OFFICERS — AUTHORITY OUTSIDE BAILI-
WICK.

An undercover police officer who engages in an illegal drug transaction outside his bailiwick without the cooperation of local authorities or the State Police is not disqualified from filing a criminal complaint against the person with whom he

dealt or from testifying against the person in subsequent judicial proceedings; nor do the officer's actions entitle the defendant to dismissal of criminal charges resulting from the complaint (MCL 764.1, 764.2a; MSA 28.860[1], 28.861[1]).

2. CRIMINAL LAW — POLICE OFFICERS — AUTHORITY OUTSIDE BAILIWICK.

A police officer may not exercise authority outside his bailiwick unless he is enforcing the laws of the state in conjunction with local authorities or the State Police or is acting within the provisions of the hot pursuit statute (MCL 117.34, 764.2a; MSA 5.2114, 28.861[1]).

3. CRIMINAL LAW — WARRANTS — COMPLAINTS — PRELIMINARY EXAMINATIONS — WITNESSES — BINDING OVER OF DEFENDANTS.

A complainant in a criminal case need not have been acting legally at the time the offense complained of occurred in order for a magistrate to issue a warrant; nor are complainants or witnesses for or against a defendant at a preliminary examination required to be acting without a taint of illegality in order to permit the binding over of the defendant or the examination of the witnesses (MCL 764.1, 766.4, 766.12, 766.13; MSA 28.860[1], 28.922, 28.930, 28.931).

CONCURRING OPINION BY LEVIN, J.

4. CRIMINAL LAW — POLICE OFFICERS — AUTHORITY OUTSIDE BAILIWICK.

*The nature and extent of undercover surveillance activity is a matter for decision primarily by the community in which the activity takes place; while the prosecutor ultimately decides whether to prosecute, a police officer may not properly undertake covert activity outside his own bailiwick without prior authorization by an officer responsible to the citizenry of the locality in which the activity is to occur (MCL 764.2a; MSA 28.861[1]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, *Michael H. Dzialowski,* Principal Appellate Attorney, and *Frank J. Machnik,* Assistant Prosecuting Attorney, for the people.

*Vlachos, Jerkins & Hurley* (by *Joseph J. Jerkins* and *James E. Vander Roest*) for the defendant.

RYAN, J. The circuit court dismissed this narcotics possession case against the defendant because the undercover police officer to whom the defendant sold the narcotics made the purchase outside his bailiwick. The Court of Appeals affirmed, and we granted leave to appeal.

We reverse.

I

Defendant, Paul Edward Meyer, was charged in a two-count complaint with the manufacture, delivery, or possession with intent to manufacture or deliver less than fifty grams of cocaine,[1] and with conspiracy to commit that crime.[2] After a preliminary examination, held on May 6, 1982, defendant was bound over to the Kalamazoo Circuit Court for trial on the possession count only. The district judge dismissed the conspiracy charge, declaring that "there has not been sufficient facts here to establish a conspiracy." That charge, therefore, is not before us.

On June 25, 1982, defendant filed in the circuit court a motion for hearing on the defense of entrapment, pursuant to *People v Turner*.[3] While testimony was being heard in support of the motion, the trial judge, sua sponte, found that the undercover officer had purchased cocaine from the defendant outside the officer's bailiwick, and that the officer's action was without any legal authority or power as a law enforcement agent. Concluding that the officer's actions were "tainted with illegality," the court dismissed the case against the defendant. On appeal, a majority of the Court of Appeals affirmed. 131 Mich App 812; 346 NW2d

---

[1] MCL 333.7401(1), (2)(a)(iv); MSA 14.15(7401)(1), (2)(a)(iv).

[2] MCL 333.7401(1), (2)(a)(iv), and 750.157a(a); MSA 14.15(7401)(1), (2)(a)(iv), and 28.354(1)(a).

[3] 390 Mich 7; 210 NW2d 336 (1973).

878 (1984). We granted leave to appeal, 419 Mich 923 (1984).[4]

## A

The facts of the case are taken from the record of the *Turner* hearing held on August 3, 1982, at which the undercover officer, Dale Carpenter of the Kalamazoo Police Department, was the sole witness.

In October of 1981, Officer Carpenter was working in a "plain-clothes capacity" with the Special Investigations Unit (SIU) of the Kalamazoo Police Department. His duties included the investigation of suspected controlled substances offenses. At approximately 6:45 P.M. on October 21, 1981, Carpenter telephoned the defendant's girlfriend, Regina Blett, and told Ms. Blett that he was in the market for a gram of cocaine. Ms. Blett informed Carpenter that the defendant would call him back. At approximately 8:30 P.M., defendant called Carpenter and told him that he could purchase a gram of cocaine and, in order to do so, Carpenter was to come to defendant's apartment at 9:30 P.M. Carpenter drove to defendant's apartment at 1710 G Avenue in the City of Parchment. Upon arriving at defendant's apartment, Carpenter handed defendant $105. Defendant left and was gone for approximately twenty minutes, after which he returned and handed Carpenter a packet of suspected cocaine.

---

[4] Our order reads:

"On order of the Court, the application for leave to appeal is considered, and it is granted. The parties are directed to include among the issues to be briefed whether the trial court erred in suppressing evidence obtained by a police officer in an extra-territorial undercover investigation undertaken without the consent or cooperation of a police agency having jurisdiction over the locus of the investigation."

As noted hereafter, our order mischaracterized the trial court's action; the court did not suppress the evidence obtained by the officer, it dismissed the charge against the defendant.

There is no indication in the transcript of the *Turner* hearing that there was any further contact between Carpenter and defendant. The incident was alleged to have occurred on October 21, 1981. Officer Carpenter signed a felony complaint against the defendant on March 17, 1982, and the defendant was arrested on March 18, 1982.

Carpenter testified that although he had some prior contact with both Ms. Blett and defendant, to the best of his knowledge, neither Ms. Blett nor defendant knew he was a policeman. On cross-examination, Carpenter testified that he had seen the defendant on two occasions prior to the October 21, 1981, incident. On those two prior occasions, Carpenter met defendant at 1137 Douglas Street in Kalamazoo. Defendant's counsel brought out the fact that Ms. Blett was the subject of an investigation by the SIU and, that on September 28 or 29, Carpenter had purchased a small quantity of LSD from Ms. Blett.

The first contact Carpenter had with defendant was on September 28, 1981, at which time defendant was a witness to the delivery of LSD to Carpenter by Ms. Blett at the Kalamazoo Douglas Street address. On either the 29th or 30th of September, Carpenter again went to the same address and purchased an ounce of marijuana from defendant,[5] and two hundred "hits" of LSD from a Robert Baldwin. Carpenter acknowledged that his main reason for going to the Kalamazoo address was to meet Baldwin and obtain LSD.

Before Officer Carpenter's testimony was con-

[5] On appeal, defendant informs us, without record support, that he was charged upon a different information with the marijuana sale, and that after the dismissal of the cocaine charge [the subject of the instant case], he pled guilty to the marijuana charge. "Defendant successfully completed his term of probation and was discharged. Defendant now resides in his hometown in Illinois, where he is gainfully employed and has avoided illegal involvement of any kind."

cluded, the trial court, sua sponte, raised the question of Carpenter's authority to act in the City of Parchment. In response to questioning by the court, Carpenter acknowledged that at the time of the transaction with defendant he was not working in conjunction with the Parchment Police Department or any law enforcement agency having county-wide jurisdiction. In response to the prosecutor's questions, Carpenter stated that, although he had not had any contact with the Parchment Police Department, he thought his sergeant had. It was later established that neither the sergeant nor any other Kalamazoo Police Department official had made contact with the Parchment Police Department regarding this case.

The trial court ruled that when Officer Carpenter was in Parchment he was operating outside his bailiwick, without the cooperation of local authorities or the State Police, and that he was, therefore, functioning without authority under MCL 764.2a; MSA 28.861(1).[6] The court held that because the officer was acting without authority, his actions were "tainted with illegality," and that this illegality "taint[ed] all further proceedings" against the defendant. The court, therefore, ordered the case dismissed.[7]

## B

The prosecutor appealed, and a divided Court of Appeals affirmed. 131 Mich App 812; 346 NW2d

[6] MCL 764.2a; MSA 28.861(1) provides:

"A peace officer of a county, city, village, or township of this state may exercise authority and powers outside his own county, city, village, or township, when he is enforcing the laws of this state in conjunction with the Michigan state police, or in conjunction with a peace officer of the county, city, village, or township in which he may be, the same as if he were in his own county, city, village, or township."

[7] While the court did not rule on defendant's claim of entrapment, it found the facts of the case sufficiently similar to entrapment to warrant the remedy of dismissal.

878 (1984). The majority concluded that since Officer Carpenter was not working in conjunction with the Parchment Police Department or the State Police so as to authorize his actions pursuant to MCL 764.2a; MSA 28.861(1), and since his activities were not within the "hot pursuit" exception of MCL 117.34; MSA 5.2114, the officer did not have authority to engage in an "illegal drug transaction" and his actions tainted the law enforcement process. The Court stated:

> We find Officer Carpenter's drug purchase from defendant without having statutory authority to do so is analogous to entrapment activities by police officers, for which the remedy is dismissal of charges against the defendant, *People v D'Angelo,* 401 Mich 167, 179; 257 NW2d 655 (1977). Like entrapment, Officer Carpenter's engagement in an illegal drug transaction without statutory authority tainted the law enforcement process; and, in order to deter such police misconduct and to protect the integrity of the judicial process, dismissal of the charge against defendant which arose out of that unauthorized police activity is warranted. See *People v D'Angelo, supra,* pp 174, 179. [131 Mich App 818-819.]

Judge GILLIS dissented, finding that nothing in the statute affected the officer's ability to swear to the factual allegations in the complaint, and that Officer Carpenter did not need the authority of any statute in order to testify before a magistrate as to the question of probable cause. The judge added:

> Whatever criminal prosecution or disciplinary measures Officer Carpenter may have exposed himself to by his actions in his investigation of the instant case, defendant should gain no benefit by this exposure. [131 Mich App 820.]

We granted leave to appeal.

## II

## A

We begin our analysis with the statute in question:

> Sec. 2a. A peace officer of a county, city, village, or township of this state may exercise authority and powers outside his own county, city, village, or township, when he is enforcing the laws of this state in conjunction with the Michigan state police, or in conjunction with a peace officer of the county, city, village, or township in which he may be, the same as if he were in his own county, city, village, or township. [MCL 764.2a; MSA 28.861(1).]

The plain words of the statute mean that Officer Carpenter, as a Kalamazoo police officer, could not exercise "authority and power" outside the City of Kalamazoo unless he was "enforcing the laws of this state in conjunction with" a peace officer affiliated with a police agency having jurisdiction in the City of Parchment, such as the Michigan State Police, the Kalamazoo Sheriff's Department or officers of the City of Parchment, or unless the statutory hot pursuit exception was applicable.[8]

It may be useful to observe what is not in issue in this case. The prosecutor concedes that Officer Carpenter was not acting in accordance with the hot pursuit statute.

It is undisputed that Officer Carpenter was not

---

[8] MCL 117.34; MSA 5.2114 provides:

"When any person has committed or is suspected of having committed any crime or misdemeanor within a city, or has escaped from any city prison, the police officers of the city shall have the same right to pursue, arrest and detain such person without the city limits as the sheriff of the county."

acting pursuant to the above statute. . . . It is accurate to describe Officer Carpenter's activity as unauthorized.

The parties are in agreement that the entrapment hearing below was never completed and that there was never any ruling by the trial judge on that issue. In addition, although this Court's order granting leave to appeal specified that the parties were to brief the issue "[w]hether the trial court erred in suppressing evidence" obtained by a police officer in an extra-territorial investigation, see n 4, the parties agree that suppression of the evidence is not an issue in this case because the trial judge did not suppress the evidence, he dismissed the case.

The issue, correctly framed, is whether the trial court erred in dismissing the criminal charge against the defendant because Officer Carpenter was acting in the City of Parchment, as it is now conceded, without the "power and authority" of MCL 764.2a; MSA 28.861(1) at the time he purchased one gram of suspected cocaine from defendant.

The testimony of record is that Carpenter purchased the cocaine from defendant in October of 1981, and, approximately six months later, swore to and signed the felony complaint against the defendant. There is no indication whatever from the record that Officer Carpenter was involved in the arrest of defendant. The officer did not sign the return on the felony warrant, and the defendant does not claim that Carpenter was involved in the arrest. Although there is testimony to the effect that the arrest did not occur in the City of Parchment, it is not clear where defendant was arrested or by whom. Carpenter testified, "We did not make an arrest in Parchment. The case was initiated in Parchment." In any event, the arrest did not occur

at the time of the offense in Parchment, but rather at a different time and place.[9] The question before us then is whether Officer Carpenter was precluded by some statutory or judicially created disability from signing the felony complaint or from giving evidence against defendant at the preliminary examination. The statute found to have been violated in this case, despite its rather long history, has not been interpreted by this Court heretofore. It has been the subject of recent attention in the Court of Appeals.[10]

Defendant argues that dismissal is the proper and required response to the "unauthorized, illegal and . . . reckless abuse of authority" of Officer Carpenter in this case, and that, as a policy matter, dismissal is the only adequate sanction that would deter police from operating outside their jurisdiction, in violation of the statute. Defendant argues that since Carpenter was without authority to investigate crimes or enforce the law outside the limits of the City of Kalamazoo, Carpenter's purchase of cocaine in Parchment was illegal. Since the Kalamazoo police had no jurisdiction or authority to act as police officers in Parchment, and since Carpenter's violation of the controlled

[9] Thus, factually, this case is *unlike* other cases wherein the police officer operating outside his jurisdiction arrests the defendant. See, e.g., *People v Davis,* 133 Mich App 707; 350 NW2d 796 (1984), held in abeyance for this case. See also *Kansas v Hennessee,* 232 Kan 807; 658 P2d 1034 (1983).

[10] See *People v Reinhardt,* 141 Mich App 173; 366 NW2d 245 (1985), *People v Davis,* n 9 *supra,* held in abeyance pending decision in this case by order dated November 30, 1984 (Docket No. 74120), *People v Palma,* 111 Mich App 684; 315 NW2d 182 (1981), *People v Rowe,* 95 Mich App 204; 289 NW2d 915 (1980), *People v Bashans* and *People v Herbin,* 80 Mich App 702; 265 NW2d 170 (1978), and *Delude v Raasakka,* 42 Mich App 665; 202 NW2d 508 (1972), *rev'd* 391 Mich 296; 215 NW2d 685 (1974).

See also related opinions of the Attorney General: OAG, 1980, No 5772 (September 5, 1980); OAG, 1980, No 5735 (July 9, 1980); OAG, 1977, No 5178 (February 25, 1977); OAG, 1977, No 5158 (July 19, 1977); OAG, 1976, No 5031 (September 17, 1976); OAG, 1973, No 4803 (October 29, 1973); OAG, 1955, No 2102 (June 27, 1955).

substance law was not authorized or exempted from criminality, these violations, in tandem, produced a situation that the circuit court and the Court of Appeals rightly found to be intolerable. The powers of the judiciary include the duty to prevent abuse of the court's process. Dismissal is the proper remedy to insulate the judicial process from illegal police conduct. Defendant also professes to be unaware of any statute authorizing "citizen" investigation of controlled substance crimes by citizen participation in the commission of those crimes.

The prosecutor argues, on the other hand, that although Officer Carpenter was not acting pursuant to the statute, he was acting in good faith in a continuing undercover operation with a three-member surveillance team; that Officer Carpenter was in the position of a citizen when he purchased the cocaine from defendant; and that the Court of Appeals decision in the instant case "flies in the face" of the recognition by appellate courts that undercover activity is a law enforcement necessity in order to deal effectively with criminal conduct. Further, according to the prosecutor, although the trial court did not rule on the point, Carpenter would have been free to make a citizen's arrest based on probable cause if he had so desired.

## B

As a general rule, peace officers who make a warrantless arrest outside their territorial jurisdiction are treated as private persons, and, as such, have all the powers of arrest possessed by such private persons.[11] In such cases, the officers' actions

[11] See MCL 764.16; MSA 28.875, which provides:
"A private person may make an arrest—
"(a) For a felony committed in his presence;
"(b) When the person to be arrested has committed a felony although not in his presence;

are lawful if private citizens would have been authorized to do the same.[12] See, generally, 6A CJS, Arrest, § 12, p 21; 5 Am Jur 2d, Arrest, § 50, p 742. See also *United States v Ible,* 630 F2d 389 (CA 5, 1980), *Kapson v Kubath,* 165 F Supp 542, 546 (WD Mich, 1958), 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), ch 11, §§ 210, 216, Restatement Torts, 2d, § 121, comment a, and Anno: *Validity, in state criminal trial, of arrest without warrant by identified peace officer outside of jurisdiction, when not in fresh pursuit,* 34 ALR4th 328, and in particular § 5(b).[13] However, these authorities are not controlling of the issue before us since Officer Carpenter did not, as far as the record indicates, make an *arrest* at the time he purchased the suspected cocaine.[14]

"(c) When summoned by any peace officer to assist said officer in making an arrest."

[12] There is some authority to the contrary. See Anno: 34 ALR4th 328, § 4, p 337.

[13] *Cf.* 80 CJS, Sheriffs and Constables, § 36, p 206; 70 Am Jur 2d, Sheriffs, Police, and Constables, § 27, p 150.

[14] Even if Carpenter had made an extra-territorial arrest, the weight of authority is against defendant. In *State v Slawek,* 114 Wis App 2d 332, 336; 338 NW2d 120 (1983), the Wisconsin Court of Appeals asserted:

"An extensive line of cases from other states, however, upholds the validity of an extraterritorial arrest made by a police officer who lacked the official authority to arrest when the place of arrest authorizes a private person to make a citizen's arrest under the same circumstances. [*State v Hodgson,* 200 A2d 567, 569 (Del, 1964)]; [*State v] Phoenix,* 428 So 2d [262, 265 (Fla App, 1982)]; *McAnnis v State,* 386 So 2d 1230, 1232 (Fla App, 1980); *State v Shipman,* 370 So 2d 1195, 1196 (Fla App, 1979); *Sturman v City of Golden Beach,* 355 So 2d 453, 455-56 (Fla App, 1978); *State v Crum,* 323 So 2d 673, 673 (Fla App, 1975); *Marden v State,* 203 So 2d 638, 640 (Fla App, 1967); *Collins v State,* 143 So 2d 700, 703 (Fla App, 1962); *State v O'Kelly,* 211 NW2d 589, 595 (Iowa, 1973); *State v Jones* [263 La 164, 173-177; 267 So 2d 559 (1972); *Stevenson v State,* 287 Md 504, 510-511; 413 A2d 1340 (1980)], and cases cited therein; *Commonwealth v Gullick* [386 Mass 278, 282-283; 435 NE2d 348 (1982)], and cases cited therein; [*Commonwealth v Harris,* 11 Mass App 165, 169-170; 415 NE2d 216 (1981)], and cases cited therein; *State, Dep't of Public Safety v Juncewski,* 308 NW2d 316, 321 (Minn, 1981); *State v Filipi,* 297 NW2d 275, 278 (Minn, 1980); *Brown v State,* 217 So 2d 521, 524 (Miss, 1969); [*Nash v*

It is indisputable that Officer Carpenter's activities in this case were not undertaken in conformity with the statute that reposes limited authority in police officers to act outside their own bailiwick. It is unnecessary, for purposes of confronting the issue before us, to decide whether, in what he did, Carpenter "violated" the statute. The question rather is whether what he did entitled the defendant to have the charge against him dismissed. We think not. What Carpenter did was participate in an illegal drug transaction with the defendant in this case and, thereafter swear to and file a complaint against the defendant and give evidence in the matter at a subsequently scheduled preliminary examination.

The defendant makes no claim that Officer Carpenter's actions in this case resulted in any constitutional deprivation to the defendant, and we perceive none. To borrow from Justice William Rehnquist, speaking in the context of an entrapment issue:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, *cf. Rochin v California*, 342 US 165 [72 S Ct 205; 96 L Ed 183; 25 ALR2d 1396] (1952), the instant case is distinctly not of that breed. [*United States v Russell*, 411 US 423, 431-432; 93 S Ct 1637; 36 L Ed 2d 366 (1973).]

Defendant does not contend, and we do not perceive, that Officer Carpenter's conduct was so outrageous in this case as to preclude the invocation

*State*, 207 So 2d 104, 106 (Miss, 1968)]; [*Marley Construction Co v Westbrook*, 107 So 2d 104, 106-107 (Miss, 1958); *Meadows v State*, 655 P2d 556, 557 (Okla Crim App, 1982)]; and [*State v MacDonald*, 260 NW2d 626, 627 (SD, 1977)]."

of judicial processes against the defendant on the basis of a due process violation.

The correct focus in this case, as we have said, is upon the legality of Officer Carpenter's action in signing and swearing to a felony complaint against the defendant, and testifying at the preliminary examination.

Our attention has not been invited to any constitutional, statutory, common-law, or decisional authority that would disqualify an undercover officer who engages in an illegal drug transaction outside his bailiwick from filing a criminal complaint against the person with whom he dealt and from testifying against such person in subsequent judicial proceedings; nor have we found any.

MCL 764.1; MSA 28.860(1) provides:

> A magistrate shall issue a warrant upon presentation of a proper complaint alleging the commission of an offense and a finding of reasonable cause to believe that the person accused in the complaint committed that offense. The complaint shall be sworn to before a magistrate or clerk.

As noted by the dissenting judge below, nothing in that statute requires that the complainant not have been acting illegally at the time the offense occurred. Likewise, nothing in the statutes that authorize the binding over of the defendant to the circuit or Recorder's courts following preliminary examination,[15] or provide for the examination of witnesses for[16] or against[17] the defendant at the preliminary examination, requires that the complainant or any of the witnesses be acting without a "taint of illegality" concerning the commission of the offense in question.

---

[15] MCL 766.13; MSA 28.931.
[16] MCL 766.12; MSA 28.930.
[17] MCL 766.4; MSA 28.922.

As Judge GILLIS pointed out:

> [If it were otherwise,] [a] prostitute severely
> beaten by a customer would be prevented from
> pressing charges: a criminal could not complain
> against his co-conspirator in exchange for leniency
> or immunity. [131 Mich App 820.]

Although neither party has cited any case law
directly on point, several foreign cases have ad-
dressed the legality of investigative activities by
police officers acting outside their jurisdiction. In
*Meadows v State,* 655 P2d 556-557 (Okla Crim
App, 1982), defendant was charged and convicted
of several controlled substances offenses. On ap-
peal, defendant contended that "the investigation
and subsequent drug purchase by a municipal
officer acting outside of his territorial jurisdiction
was a subterfuge and thus illegal." The undercover
policeman made several "buys" from the defen-
dant over a period of time, the arrest warrant was
issued several months after the drug purchases,
and apparently the undercover officer did not ar-
rest the defendant.

The Court of Criminal Appeals stated:

> In this case, [the undercover policeman] did not
> conduct a warrantless search nor did he effectuate
> an arrest outside his jurisdiction. He was merely
> investigating illegal drug activities that were
> brought to his attention, while he was acting
> within his jurisdiction. Generally, a police officer's
> authority outside his jurisdiction is no greater
> than that of a private citizen. See *Cooper v State,*
> 510 P2d 983, 986 (Okla Crim App, 1973). Here, we
> find that Officer Thompson was acting as a private
> citizen. During the entire drug investigation Offi-
> cer Thompson was not acting under color of law.
> He did not hold himself out as a police officer. At
> no time during his investigation did any of the

participants know Thompson's official identity. See *State v Filipi*, 297 NW2d 275 (Minn, 1980). Thompson's activities were no different from what a private citizen could have done had he been informed of possible illegal drug activities. Thompson, while acting as a private citizen, investigated the source of the drug distribution and informed the local law enforcement authorities about the criminal activities. Based upon Thompson's information, the Oklahoma County Sheriff's Office obtained an arrest warrant and effectuated a lawful arrest within their jurisdiction. Therefore, we hold that Meadows' arrest was lawful. [655 P2d 557-558.]

In *State v Filipi*, 297 NW2d 275 (Minn, 1980), and *State v Phoenix*, 428 So 2d 262 (Fla App, 1982), the courts upheld undercover investigations and arrests that took place entirely outside the officers' bailiwicks. The court in *Phoenix* stated:

[P]olice officers acting outside their jurisdiction but not in fresh pursuit may not utilize the power of their office to gather evidence or ferret out criminal activity not otherwise observable. . . . The purpose of this doctrine is to prevent officers from improperly asserting official authority to gather evidence not otherwise obtainable. [428 So 2d 266. Citations omitted.]

The Florida court reasoned that an undercover police officer does not rely upon his official authority to investigate criminal activity; he relies upon his own senses. An undercover officer, by definition, does not obtain information through actions taken under color of law. He does so by concealing his identity as an officer of the law. Defendant in the present case makes no claim that he knew Officer Carpenter was a policeman, or that the officer exercised his *official authority* outside of

Kalamazoo to obtain information as to defendant's activities.

We know of no constitutional, statutory, or other authority disqualifying Officer Carpenter from swearing to and filing the complaint in this case and from later giving testimony against the defendant at the preliminary examination, and we decline to create any.

Furthermore, despite the fact that Officer Carpenter was acting outside his jurisdiction without authority and not in conjunction with a peace officer having jurisdiction over the City of Parchment, the defendant is not entitled to relief in the form of dismissal of the criminal felony information.

The Court of Appeals held that the drug purchase by Officer Carpenter outside his bailiwick was "analogous to entrapment" and thus merited dismissal of the charges against the defendant under the rule of *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977). In *D'Angelo,* we endorsed the objective test for entrapment enunciated in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), and stated that entrapment was an issue for the judge to decide rather than the jury. Both cases hold that dismissal is the necessary remedy when agents of the government engage in the impermissible activity of manufacturing crime. Nothing said in *D'Angelo* or *Turner* would extend the reach of the dismissal remedy to "analogous" situations. We expressly reject the Court of Appeals holding that because Officer Carpenter was not acting under authority of MCL 764.2a; MSA 28.861(1), his actions were "analogous to entrapment" and *for that reason* "tainted the law enforcement process."[18] No authority for such a con-

_____

[18] We express no opinion on the claim of entrapment raised by

clusion is cited by the lower courts and, to our knowledge, there is none.

By no means should it be understood that we condone Officer Carpenter's activities in this case. What he did was plainly contrary to the statute and, as such, may properly warrant official sanction. He may conceivably be liable to other consequences as well. It might be argued, for example, that the exemption from criminal liability in the Controlled Substances Act that a police officer enjoys in the lawful performance of his duty does not extend to an undercover officer engaged in an illegal drug transaction outside his bailiwick and not in conjunction with a police officer having jurisdiction in the area.[19]

In addition, an officer acting outside his bailiwick without authority may subject himself to civil liability. See, *e.g., Kapson v Kubath, supra,* wherein the Berrien County Sheriff acted wholly without authority in the State of Indiana and was found civilly liable for wilful and malicious damage to the plaintiff's property.

Whether Officer Carpenter's involvement in the drug transaction in this case exposes him to civil or criminal liability is not before us, and we express no opinion about the matter.[20]

---

defendant in his motion before the trial court, since that motion was never decided by the trial court or addressed below.

[19] MCL 333.7531(3); MSA 14.15(7531)(3) provides:

"(3) A liability is not imposed by this article or [*sic*] an authorized state, county, or local officer, engaged in the lawful performance of the officer's duties."

[20] The defendant argues, quite correctly, that aside from the duty of law enforcement personnel to scrupulously adhere to statutes directly circumscribing enforcement actions, and the question of the officer's personal liability in failing to do so, there is the very practical risk that without adherence to the statute in cases such as this, law enforcement efforts might overlap, resulting not only in wasted resources, but in possible tragic confrontations between different "undercover" forces acting upon the same investigation, each unaware of the presence of the other.

It is clear, however, that under the facts of this case, the remedy, if any, to which defendant may be entitled does not include dismissal of the criminal charges against him. The fact that Officer Carpenter was acting outside his bailiwick does not preclude his swearing to the felony complaint or his acting as a complaining witness; nor does it preclude his giving testimony at the preliminary examination. The courts below erred in dismissing the charge and in upholding that dismissal.

We reverse the judgment of the Court of Appeals and remand the case to the Kalamazoo Circuit Court for further proceedings consistent with this opinion.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with RYAN, J.

LEVIN, J. (*concurring*). The question, as framed in the opinion of the Court, is whether a prosecution for the unlawful sale of a controlled substance should be dismissed where an undercover city police officer purchased the controlled substance and obtained knowledge of the narcotics law violation in contravention of the statute, added in 1939,[1] that authorizes a police officer to exercise "authority and powers" outside his own locality "when . . . enforcing the laws of this state in conjunction" with the state police or law enforcement officers in the locality "in which he may be, the same as if he were in his own county, city, village or township."[2]

The opinion of the Court holds that although the officer exceeded his authority, the circuit court erred in dismissing the prosecution. The opinion

[1] 1939 PA 100.
[2] MCL 764.2a; MSA 28.861(1).

states that the officer was not precluded from swearing to a felony complaint or acting as a complaining witness or testifying at the preliminary examination.[3] The opinion also states that although this Court, in granting leave to appeal, specified that the parties were to brief the question "[w]hether the trial court erred in suppressing evidence" obtained by the officer, "the parties agree that suppression of the evidence is not an issue in this case because the trial judge did not suppress the evidence, he dismissed the case."[4]

I agree that whether the officer may sign a felony complaint or testify at all, and whether evidence obtained by him outside of his bailiwick should be suppressed and the prosecution dismissed are each separate questions.

I concur in the result because I agree that the remedy for violation of the statute is neither barring the officer from signing a complaint or testifying at all nor dismissal of the prosecution.[5] Until Meyer seeks an evidentiary hearing on the question whether the evidence obtained by the officer outside of his bailiwick should be suppressed, the circuit judge rules, the Court of Appeals reviews his decision, and the question is briefed and argued in this Court, the suppression question is not before us to decide.

---

[3] *Ante,* p 162.

[4] *Ante,* p 152.

[5] I do not agree that if this Court were to dismiss the prosecution it would mean that those who engage in unlawful activity would not be able to act as complaining witnesses. It is one thing to permit a person who has engaged with *scienter* in criminal activity to act later as a complaining witness. It is quite another to permit a person charged with enforcing the law to engage in activities violative of the law. Allowing coconspirators or battered prostitutes to testify does not create or heighten incentives for unlawful activity. Felons do not engage in unlawful activity to obtain and later provide a prosecutor with evidence of their unlawful activity. The decision of an officer to act outside of his bailiwick is made *ex ante,* not *ex post.*

# I

Dale Carpenter, a member of the special investigation unit of the Kalamazoo Police Department, was working undercover when he communicated with defendant Paul Meyer's girlfriend at their apartment to arrange for the purchase of cocaine. The apartment is in Parchment, another city in Kalamazoo County. The officer testified that when he made the purchase he had mistakenly believed Kalamazoo had an arrangement with Parchment that would have brought his undercover activity within the purview of the statute.

# II

A citizen who is not a police officer is not likely to be exonerated from purchasing a controlled substance when he explains that he was acting undercover and merely acquiring evidence to be turned over to the authorities for prosecution of the seller. Carpenter's unlawful activity cannot be justified on the basis that he did no more than a private citizen might do. While Carpenter "did not hold himself out as a police officer,"[6]—no undercover officer does—he thought that as an undercover officer he was acting under the protection of the law[7] in making a purchase of a controlled substance, an act that would subject a citizen not a police officer to prosecution. But for the protection the law provides undercover officers, they could not and would not act at all. Carpenter's activity, dependent on the protection of the law, is subject to the law.

---

[6] *Meadows v State,* 655 P2d 556, 557 (Okla Crim App, 1982).

[7] "A liability is not imposed by this article or [*sic*] an authorized state, county, or local officer, engaged in the lawful performance of the officer's duties." MCL 333.7531(3); MSA 14.15(7531)(3).

To be sure, Carpenter's signing of a felony complaint and testifying is not in itself unlawful. Nevertheless, the evidence he obtained was unlawfully obtained.

The nature and extent of undercover surveillance activity is a matter for decision primarily by the community in which such activity may take place. What might be thought to be an appropriate method of law enforcement in western or northern Michigan might not be thought to be appropriate in Ann Arbor, East Lansing, or Detroit. While the prosecutor ultimately decides whether to prosecute, a police officer may not properly undertake covert activity outside his own bailiwick without prior authorization by an officer responsible to the citizenry of the locality in which the undercover activity is to occur.

Today's decision should not be read as permitting, or extended to permit, police or prosecutorial authorities in one locality embarrassing law enforcement officers or a prosecutor in another locality by sending in probes and constraining the prosecutor to bring prosecutions that he might otherwise eschew, thereby also possibly tending to invade the Attorney General's supervisory power.[8]

[8] MCL 14.30; MSA 3.183.