THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE W. LAWSON, Defendant-Appellant.

First District (1st Division) No. 61682

Opinion filed March 1, 1976.

Carl M. Walsh, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, George W. Lawson (defendant) was found guilty

of unlawful use of weapons (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4)) in that he carried a pistol concealed on his person. He was sentenced to four months in custody of the Department of Corrections. He appeals to this court contending that he was wrongfully arrested and searched in Evanston by two Chicago police officers as a result of uncorroborated information received by the officers from an unidentified man and also that Chicago police officers had no legal authority to arrest and search him while within Evanston. The State contends that the information supplied to the officers by a private citizen was sufficient justification for questioning defendant; that the responses elicited gave the officers probable cause to arrest and search him and also that Chicago police officers had legal authority to arrest and detain defendant in Evanston until the arrival of Evanston police.

At trial, defendant proceeded with a motion to suppress the physical property taken from him by the police officers. He called both officers as his witnesses. The motion was denied and the case went to trial. There was a stipulation to receive the evidence heard on the motion to suppress which was augmented by additional testimony. The evidence shows that Chicago police officers Tamillo and Goffron, in uniform, were eating during early evening of October 29, 1974, in a restaurant on the north side of Howard Street in Evanston directly across from the north boundary of Chicago. A citizen in the restaurant came up to the officers' table and told them that there was an intoxicated person at the counter who was adjusting a gun, or what the citizen believed to be a gun, in his belt. The citizen pointed out the defendant. Neither of the officers knew the informant or had ever seen him before.

The officers then both approached the defendant and Officer Tamillo asked him if he was a police officer. The defendant responded negatively. The officer asked defendant if he had a gun "on him" and defendant responded affirmatively. Officer Tamillo told defendant to keep his hands where they could be seen and Officer Goffron then removed a pistol from defendant's belt. The officer testified that defendant was not advised that he had been arrested but that he would not have allowed defendant to leave.

Officer Goffron corroborated this testimony. Defendant was seated 75 to 100 feet away from the officers. Defendant had been causing no disturbance and they did not observe him committing any crime. Upon approaching defendant, the officers noted that he appeared to be intoxicated. Prior to the conversation between defendant and the officers, Goffron noticed a bulge under defendant's sweater near his leg. He did not see a gun but an outline of what appeared to be one. The officers took possession of the gun, called the Evanston police, explained the situ-

ation and gave them the weapon. The complaint was signed by Evanston police.

■■ As regards the legal right of police officers in general to make an arrest, the statute grants this authority where the officer "has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).) It has been repeatedly and authoritatively held that "reasonable grounds" has the same substantive meaning as "probable cause". (See *People v. Wright*, 56 Ill. 2d 523, 528, 529, 309 N.E.2d 537.) Assuming then that defendant was actually arrested in the legal sense before the weapon was removed from his person, the issue is whether this act was performed by the officers with reasonable grounds or probable cause.

This analysis depends in turn upon the nature and source of the information given to the officers while they were seated at the table and before they approached the defendant. The case before us is not one in which information is given to the police by a paid informer. The record shows only that the information came to the police from a citizen informant. In this particular regard, the case is close to *In re Boykin*, 39 Ill. 2d 617, 237 N.E.2d 460. There, the assistant principal of a school told two officers that he had received anonymous information that one of the students had a gun. Defendant was brought out from his classroom and one of the officers ordered him not to move his hands and asked if he had a gun. Defendant replied negatively. One officer held his arms and the other removed a gun from his pocket. The Supreme Court held that there was probable cause for this arrest and search and approved denial of a motion to suppress the gun as evidence.

■■ The court pointed out the distinction between a paid informer and an anonymous informant predicated upon "a complete absence of any possible element of gain to the anonymous informant from furnishing false information, * * *." (39 Ill. 2d 617, 619.) *Boykin* is also close to the case before us since the court there pointed out that neither gambling nor narcotics were involved but the issue was safety of the students. Other decisions by the Supreme Court comment upon and adopt the distinction between paid informers and citizen informants. See *People v. Hester*, 39 Ill. 2d 489, 514, 237 N.E.2d 466; also *People v. Hoffman*, 45 Ill. 2d 221, 225, 226, 258 N.E.2d 326, *cert. denied*, 400 U. S. 904.

In our opinion, these authorities are closer to the case at bar than *People v. Parren*, 24 Ill. 2d 572, 182 N.E.2d 662, cited by defendant. There, police merely testified that they had received their information from an anonymous source. Predicated thereon, they searched a private

home and seized narcotics. In the case before us, the police were told by a citizen that the defendant, seated in the same public place as they were, was carrying the gun and was under the influence of alcohol. These facts created the possibility of a clear and present danger to the officers themselves, to the informant and very possibly every other patron in the restaurant. Under these circumstances, in view of the authorities above cited, we hold that the police were fully justified in arresting defendant and searching his person. In fact, the law of Illinois authorizes any private person to make an arrest under circumstances such as disclosed here since any person would have "reasonable grounds to believe that an offense other than an ordinance violation is being committed." Ill. Rev. Stat. 1973, ch. 38, par. 107—3.

One further consideration also supports the conclusion that the motion to suppress was properly denied. The applicable statute provides that an arrest "is made by an actual restraint of the person or by his submission to custody." (Ill. Rev. Stat. 1973, ch. 38, par. 107—5(a).) This court has pointed out that "every arrest involves three elements: (1), authority to arrest; (2), assertion of that authority with intention to effect an arrest; and (3), restraint of the person to be arrested." *People v. Howlett*, 1 Ill. App. 3d 906, 909, 910, 274 N.E.2d 885, *leave to appeal denied*, 49 Ill. 2d 576.

██ In the case before us, the officers walked over to the defendant and asked him if he was a police officer. He responded negatively. When they asked if he was carrying a gun, he told them that he was. This was an admission of guilt by the defendant which in and of itself not only gave them authority to arrest and search him but made it their duty to proceed precisely as they did. Prior to hearing this admission, the police officers had not detained defendant in any manner. There was no restraint of his person and no intention to arrest so that there was no arrest as defined by law. Even if the very presence of two uniformed policemen might be deemed to constitute an indirect detention, it was certainly noncoercive and designed only with good reason to clarify a suspicious circumstance. This type of initial questioning has consistently been held not to require *Miranda* warnings. (See *People v. Hubbard*, 55 Ill. 2d 142, 151, 152, 302 N.E.2d 609; *People v. Thompson*, 48 Ill. 2d 41, 44, 268 N.E.2d 369.) We find no merit in this portion of defendant's argument.

Defendant's next contention is directed to the fact that the arrest and search occurred in Evanston while the officers were Chicago police. The statutes of Illinois define a "police district" as (Ill. Rev. Stat. 1973, ch. 24, par. 7—4—7):

"The territory which is embraced within the corporate limits of adjoining municipalities within any county in this State shall be a police district."

The following section of the statute (Ill. Rev. Stat. 1973, ch. 24, par. 7—4—8) provides:

"The police of any municipality in such a police district may go into any part of the district to suppress a riot, to preserve the peace, and to protect the lives, rights, and property of citizens. For these purposes the mayor of any municipality in the district, and the chiefs of police therein, shall use the police forces under their control anywhere in the district."

From these enactments it is abundantly clear that Chicago and Evanston constitute a single police district. It would also seem that the statute would directly authorize Chicago police to take police action in any part of the police district, as they did in the case at bar, for the purpose of protecting the lives of citizens. The clear and present danger to all patrons of the restaurant, including the officers and even defendant himself, has already been pointed out. This court has occasion to consider the above sections of the statute in *People v. Harvey,* 48 Ill. App. 2d 261, 199 N.E.2d 236. That case involved a search by Chicago police of a home in Bridgeview, a municipality adjoining Chicago, made without a warrant pursuant to consent of the wife of the owner in possession. The court held that the statutory enactments gave the police who were investigating commission of a crime in the same police district "the power to seek the fruits of the crime  *  *  *." (48 Ill. App. 2d 261, 266.) In the case before us, as shown, the Chicago police did not actually arrest defendant but, with good cause and after his admission of guilt, took possession of the weapon which defendant was illegally carrying.

In the subsequent case of *People v. Carnivale,* 21 Ill. App. 3d 780, 315 N.E.2d 609, this court had occasion to consider the same statutory enactments. The court concluded that this statute authorized the police of one municipality to act in their official capacity in another municipality within the same police district only under the specific types of occurrences delineated in the statute; namely, "to suppress a riot, to preserve the peace, and to protect the lives, rights, and property of citizens." Under the facts there presented, this court held that Chicago police lacked authority to execute a search warrant in the city of Rosemont in connection with alleged gambling activities of the defendants. The decision of this court was subsequently reversed by the Supreme Court upon different grounds and upon the theory that, as provided by statute, the search warrant authorized the officers to execute it anywhere within

the State of Illinois. Therefore, the Supreme Court found it unnecessary to consider the contentions of the parties centered about the statutory enactments above set forth. *People v. Carnivale,* 61 Ill. 2d 57, 329 N.E. 2d 193.

■■ Considering these various authorities we note that this court in *Carnivale* expressly differentiated *Harvey* on the theory that the situation there satisfied one of the provisions of the statute; namely, "the need to protect the property of others." (21 Ill. App. 3d 780, 784.) We agree completely with this differentiation and we believe it applicable to the case before us. As stated, we are dealing here with a situation in which there was a clear and pressing necessity for action by the police to protect the safety and lives of all persons within the restaurant. It would be ludicrous to construe this statute to require the police officers in the situation here disclosed to seek authority to investigate the situation from the mayor of Evanston or Chicago, or from one of the chiefs of police. In addition, the police acted in effect under authority which would have permitted any private citizen to question the defendant. Upon being told by the defendant himself that he was in fact carrying a dangerous weapon, particularly in view of the evidence of his use of alcohol, it was the clear duty of the police to act as they did.

We find no error in this record and the judgment appealed from is accordingly affirmed.

Judgment affirmed.

BURKE and SIMON, JJ., concur.