THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH MARINO, Defendant-Appellant.

Second District No. 77-516

Opinion filed January 22, 1980.—Rehearing denied February 27, 1980.

Mary Robinson, Allen Wiederer, and Richard E. Cunningham, all of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (John T. Elsner, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Joseph Marino, was found guilty by a Du Page County jury of the offenses of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a)) and possession of burglary tools (Ill. Rev. Stat. 1975, ch. 38, par. 19—2). He was sentenced to serve a term of 6 to 18 years' imprisonment. On appeal, defendant contends: (1) that the trial court erred in denying his motion to suppress evidence because the warrantless arrest effected by Chicago police department officers in Wood Dale, Illinois for a crime committed in Wood Dale, was illegal; and (2) that the trial court erred in admitting prejudicial hearsay testimony of a prior offense into evidence. We affirm.

On December 16, 1976, defendant Marino and co-defendant Daniel Wilhite (not a party to this appeal) were arrested by Chicago police department officers in Wood Dale, Illinois, for a burglary occurring in Wood Dale the same day.[1] These arrests culminated an intensive, 8-day investigation of both defendants by Chicago police. Wood Dale police played no part in the arrests themselves and did not participate or cooperate in any way with the investigation. No warrants for the arrest of either defendants were issued at any time.

The investigation leading to the defendant's arrest was commenced on December 8, 1976, with the report of a burglary occurring in Chicago on December 3, 1976, in which two suspects fitting the description of Marino and Wilhite were observed leaving the scene. Twelve Chicago policemen were then assigned to conduct covert surveillance of the two during daytime hours.

On December 14, 1976, the police observed defendant drive his car to Wilhite's home in Chicago, pick Wilhite up, and then drive to a building located at 300 North Cedar in Wood Dale. Both defendants were later seen leaving the apartment building located at that address carrying

[1] Wood Dale is located approximately 2 miles west of O'Hare International Airport, which is Chicago's northwestern city limits.

what appeared to be an empty bleach bottle. The two men then drove to another housing complex in the area and then to another one in Bensenville before driving back to Chicago.

On December 16, 1976, a similar series of events transpired, which eventually lead to the arrest of both defendants. Defendant Marino was again observed driving to Wilhite's house, picking him up, and then driving out to the apartment building located at 300 North Cedar in Wood Dale. In the meantime, Chicago police conducting the surveillance of the two entered a nearby apartment to use it as a stake-out. Marino and Wilhite were observed in a basement apartment of the Cedar Avenue building and were arrested outside by Chicago police for burglary. Items seized from defendant during a post-arrest search were later introduced into evidence at trial.

The cases of both defendants were joined for trial. Prior to trial, defendants moved to suppress the evidence obtained in the searches made subsequent to arrest on the ground that the arrests were illegal. The motion was denied after an extensive hearing.

The cases then proceeded to trial, each defendant represented by separate counsel. The State presented evidence demonstrating that defendants had burglarized the apartment located at 300 North Cedar.[2] Defendants contended that no burglary had occurred and that the Chicago police officers fabricated a case against them through "over-zealousness." On cross-examination of one of the arresting officers, defense counsel elicited an admission that the officer had not prepared a police report in regard to the burglary committed on December 16, 1976. The defense apparently intended to show that the absence of properly prepared police reports was some evidence of fabrication by those officers. Over the objection of the prosecutor, defense counsel for both defendants were allowed to question the officer regarding the procedures used to investigate the defendants prior to December 16, 1976. Counsel also inquired into the surveillance employed by the officers on December 14, 1976.

Over the objection of both defense counsel, the officer was allowed to testify on redirect examination that the investigation of the two defendants was commenced as a result of a report of an attempt burglary occurring in Chicago on December 3, 1976, in which two suspects fitting the descriptions of both defendants were seen leaving the area. Also admitted into evidence was a copy of a police report pertaining to this burglary. At the conclusion of the testimony, defendants each moved for a mistrial. The trial court granted the motion as to Wilhite, ruling that the testimony of the officer was prejudicial to the defendant and not invited

[2] As defendant does not contend that the verdict was against the manifest weight of the evidence, it is unnecessary to recite the particulars of the State's evidence.

by his counsel, but rather by Marino's defense attorney. Defendant Marino's motion was denied.

At the conclusion of the testimony, the jury returned a verdict of guilty on both charges. This appeal followed.

I.

Defendant first contends that the arresting officers, all of whom were members of the Chicago police department, had no authority to make a warrantless arrest in Du Page County for a crime committed in a town of that county; thus, defendant concludes, the arrest was illegal and his motion to suppress the evidence obtained as fruits of the unlawful arrest should have been granted by the trial court. In response, the State argues that the arresting officers did not lose their official authority to act as "peace officers" merely because defendant was arrested outside the confines of their territorial jurisdiction. Alternatively, the State argues that the arrest was valid as an arrest by private persons pursuant to section 107—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—3).

■■ We have little hesitation in holding that the Chicago police officers lacked official authority to arrest defendant in Du Page County under the circumstances presented in the case at bar. At common law, municipal and county police officers generally had no power to make warrantless arrests outside the territorial limits of the political entity which appointed them to their office. (*E.g.*, *Kindred v. Stitt* (1869), 51 Ill. 401, *People v. Clark* (1977), 46 Ill. App. 3d 240, 360 N.E.2d 1160; see generally, 5 Am. Jur. 2d *Arrest* §50 (1962).) A well-established exception to this rule is that a local police official has the power to make a warrantless arrest of a suspected felon outside his territorial jurisdiction where the offender fled from the jurisdiction with the officer following in fresh pursuit. (*People v. Clark*; see generally 5 Am. Jur. 2d *Arrest*, §51 (1962).) However, this exception is clearly not applicable to the case at bar, because the burglary was not committed in the City of Chicago and defendants were not attempting to flee the jurisdiction of the arresting officers.

■■ The common law rule regarding the authority of police officers to arrest outside the limits of their jurisdiction has been modified in at least one important respect by statute. Under section 7—4—7 of the Municipal Code of 1961 (Ill. Rev. Stat. 1977, ch. 24, par. 7—4—7), a police district is composed of the territory "which is embraced within the corporate limits of adjoining municipalities within any county" in the State. Pursuant to the authority conferred by section 7—4—8 of the Code (Ill. Rev. Stat. 1977, ch. 24, par. 7—4—8), the police of any municipality in a police district may enter any part of the district "to suppress a riot, to preserve the peace, and to protect the lives, rights, and property of citizens." These

sections have long been construed as extending the power of local police into adjoining municipalities within the same county. *E.g., People v. Lawson* (1976), 36 Ill. App. 3d 767, 345 N.E.2d 41; *Taylor v. City of Berwyn* (1938), 297 Ill. App. 417, 17 N.E.2d 1007, *aff'd* (1939), 372 Ill. 124, 22 N.E.2d 930.

However, this statutory modification to the common law rule can have no application to the facts presented in the case at bar. We take judicial notice, as requested by defendant, that Wood Dale, Illinois, is not a municipality whose corporate limits adjoin those of the City of Chicago. Thus, even if the above mentioned statutes could be read as broadening a police district to adjoining municipalities in different counties, the statute would not grant the Chicago police the official power to arrest as peace officers in this case.

We find that the holding of the recent case of *People v. Durham* (1979), 71 Ill. App. 3d 725, 390 N.E.2d 517, is inapplicable to the facts presented in this case. In *Durham*, the Appellate Court of Illinois, Fifth District, held that section 107—5(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 107—5(c)) was intended to abrogate the common law rule limiting the jurisdiction of local police and to authorize county and municipal police officers to make warrantless arrests anywhere in the State when necessary. Section 107—5(c) states:

> "An arrest may be made anywhere within the jurisdiction of this State." Ill. Rev. Stat. 1977, ch. 38, par. 107—5(c).

At first glance, *Durham* appears to greatly broaden the arrest powers of local police officers; however, a careful analysis of the court's opinion shows that its holding is to be applied only where the offense itself was committed in the arresting officers' jurisdiction. As the *Durham* court stated:

> "* * * it is proper for a police officer to make a warrantless arrest in an adjoining county when he has probable cause to believe that the accused committed an offense in the county in which the officer holds office. This is true even though the officer had merely entered the adjoining county because of some suspicious activity and was not then in fresh pursuit of the offender." (71 Ill. App. 3d 725, 727, 340 N.E.2d 517, 518.)

Therefore *Durham* does not govern the situation presented in the case at bar, because the offense was not committed in the jurisdiction of the arresting officers. Consequently, we hold that, under existing case and statutory law, the Chicago police had no official authority to make a warrantless arrest in Du Page County for a crime committed in a town of Du Page County.

As an alternate argument, the State contends that the arrest by Chicago police officers can be considered as a valid arrest by private

persons under section 107—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—3). Section 107—3 states:

> "Any person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed."

The State offers no authority to support this contention and is apparently unaware of this court's recent decision in *People v. Seybold* (1979), 77 Ill. App. 3d 614, 396 N.E.2d 295. In *Seybold*, this court held that out-of-town police officers, although not clothed with the official power to arrest as "peace officers," would nevertheless retain the power to arrest as private persons under section 107—3 of the Code. (*Seybold*, 77 Ill. App. 3d 614, 617, 396 N.E.2d 295, 298.) However, we were required to defer our final decision on the question due in part to an inadequate record and also because the matters pertaining to the arrest were raised solely by defendant's motion for a new trial which was still pending before the trial court and was not yet presented to this court for review. (*Seybold*, 77 Ill. App. 3d 614, 617, 396 N.E.2d 295, 298.) Unencumbered by such complications, we now squarely confront the issue raised in the *Seybold* case.

The State argues that the arrest was valid because the arresting officers had reasonable grounds to believe that defendant was committing the offense of burglary. Defendant, however, makes no argument that the police lacked probable cause to arrest him; rather, he argues that an arrest effected under the assertion of official police authority is invalid where the official authority to arrest does not exist, and that such an arrest may not be justified by claiming it is a "citizen's arrest." In support of this theory, defendant relies upon *Commonwealth v. Troutman* (1973), 223 Pa. Super. 509, 302 A. 2d 430.

In *Troutman*, the defendant was arrested in the Borough of Verona, Pennsylvania, by two Penn Hills township police officers for a misdemeanor traffic violation. The arresting officers observed the defendant committing the violation within the township itself; however, the defendant apparently attempted to elude the officers, who were unable to stop and arrest him until he had entered a different jurisdiction. On appeal from his conviction, defendant argued that the arresting officers had no authority to arrest outside their township and that the "hot pursuit" exception to the general rule was inapplicable to misdemeanors, and the appellate court agreed. The court then rejected the Commonwealth's alternate contention that the arrest could be considered a valid citizen's arrest, stating:

> "In the instant case, the Penn Hills Township policemen sounded their sirens, flashed their lights, exhibited their badges, and made

the arrest pursuant to their authority as law enforcement officials. The police officers' behavior was that of a policeman and not that of a private citizen. Once an officer invokes the power of the township to make an arrest, he cannot preserve the legality of the arrest by labeling his behavior a citizen's arrest." 223 Pa. Super. 509 512, 302 A. 2d 430, 432.

However, our own research has disclosed an extensive line of cases from other States which uphold the validity of an extraterritorial arrest made by a police officer who lacked the official authority to arrest, where it is determined that a private person, acting in the same cirumstances, would have been authorized by law to make a "citizen's arrest." *E.g.*, *State v. Goldberg* (1975), 112 Ariz. 202, 540 P. 2d 674 (arrest by Federal officer for State law violation; held, valid arrest); *State v. McCullar* (1974), 110 Ariz. 427, 520 P.2d 299 (warrantless arrest of defendants in Phoenix, Arizona, by Denver, Colorado, police officers); *People v. McCarty* (1958), 164 Cal. App. 2d 322, 330 P.2d 484 (warrantless arrest by Ventura County officers in Los Angeles County); *Sturman v. City of Golden Beach* (Fla. App. 1978), 355 So. 2d 453 (civil suit for false arrest; held, police officers from other jurisdiction had power as private citizens to arrest plaintiffs); *Dodson v. State* (1978), ___ Ind. ___, 381 N.E.2d 90 (warrantless arrest by local police officers in another county upheld as arrest by private citizens); *Nash v. State* (Miss. 1968), 207 So. 2d 104 (arrest by sheriff outside of jurisdiction held valid as a citizen's arrest); *State v. MacDonald* (1977), ___ S.D. ___, 260 N.W.2d 626; *State v. Harp* (1975), 13 Wash. App. 239, 534 P.2d 842 (warrantless arrest by town police for crimes committed outside of town; held, arrest valid as citizen's arrest).

To the same effect are a number of Federal cases. *E.g.*, *United States v. Swarovski* (2d Cir. 1977), 557 F.2d 40 (arrest by Customs Service agents, who are not empowered to arrest by Federal law, held valid as arrest by private persons under New York law); *Ward v. United States* (9th Cir. 1963), 316 F.2d 113 (warrantless arrest by postal inspectors, who lacked power to arrest under Federal law, held valid as an arrest by private persons under California law); *United States v. DeCatur* (9th Cir. 1970), 430 F.2d 365 (dicta).

A comprehensive analysis of these decisions is unnecessary. In general, the courts reason that the assertion of official authority to effect an arrest is irrelevant to a determination of the validity of the arrest itself. The relevant inquiry is, rather, whether or not the person attempting to arrest was authorized to do so by statute, in any capacity, even though that capacity may not be that which was claimed.

This same reasoning is articulated, although in a slightly different context, in the Restatement (Second) of Torts (1965). Section 121, entitled "Arrest by Peace Officer Without Warrant," states, in pertinent part:

"* * * [A] peace officer acting within the limits of his appointment is privileged to arrest another without a warrant

(a) under any of the conditions which under the rules stated in §§119 and 120 give to a private person the privilege to arrest without a warrant, * * *."

The comment to this subsection states:

"d. The peace officer has all the privileges of arrest which, by the rules stated in §§119 and 120, are conferred upon one not a peace officer. In such a case, his privilege to arrest is not dependent upon his being a peace officer; *and it is immaterial whether he purports to act in his capacity as peace officer or as a private person or whether he is or is not acting within the territorial or other limits of his designation.*" (Emphasis ours.)

We believe that the views expressed in the Restatement and in the many cases cited above are better reasoned and should control here. The emphasis in the *Troutman* decision upon sirens, flashing lights, and badges is, in our opinion, superficial, and we therefore decline to follow the holding of that case, which in any event appears to be a minority view.

In sum, we hold that a warrantless arrest effected by a police officer who asserts official authority to arrest which he does not in fact have is nevertheless valid if an arrest made by a private person under the same circumstances would have been valid. As it is clear that the arresting officers here had reasonable grounds to believe that defendant was committing a felony, the arrest was valid as an arrest by private persons under section 107—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 107—3). Consequently, the trial court did not err in denying defendant's motion to suppress.

II.

Defendant next contends that the trial court erred in allowing one of the Chicago police officers to testify on redirect examination that the burglary investigation was commenced on December 8, 1976, due to a report of an attempt burglary allegedly occurring on December 3, 1976, in Chicago in which two suspects fitting the description of both defendants were observed leaving the scene. He argues that this testimony was inadmissible under the general rule prohibiting the introduction of unrelated crimes into evidence, or, in the alternative, that the testimony was inadmissible hearsay. We disagree.

The general rule in this State is that evidence of criminal offenses other than those for which the defendant is on trial is inadmissible. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288; *People v. Cole*

(1963), 29 Ill. 2d 501, 194 N.E.2d 269.) While this rule is subject to well-established exceptions (*i.e.*, where the evidence tends to show intent, motive, identity, the absence of mistake, or *modus operandi*, etc.; see *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489), these exceptions do not appear to be applicable here. The alleged burglary on December 3, 1976, has no relevance to the crime which occurred on December 16, 1976, and in the ordinary case, the testimony elicited by the prosecutor referring to the December 3 crime would not have been admissible as part of the State's case in chief.

However, it was defendant who first inquired into the events occurring in the course of the Chicago police investigation prior to the date of the offense for which he was being tried. On cross-examination of one of the investigating officers, defense counsel went into great detail concerning the operation of the police investigation, and in the course of his cross-examination, alluded to defendant's visit to the Wood Dale housing complex on December 14, 1976, which raised the possibility that another burglary could have occurred that same date. This testimony was intended by defense counsel to discredit the investigating officer by suggesting that he and the other officers fabricated the burglary charge placed against defendant to terminate an unproductive criminal investigation. It was only upon redirect examination that the prosecutor sought to disclose that the investigation was prompted by a citizen complaint. This, of course, was intended to rebut the fabrication charge and to explain the basis for the police investigation.

In our opinion, any reference to crimes occurring before December 16 was made only in response to matters first brought up by the defense. It is well-settled law that if one party opens up an issue and the other party will be prejudiced unless he can introduce contradictory or explanatory evidence, then the prejudiced party will be permitted to introduce such evidence, even though it would not have been admissible initially. (*Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 316 N.E.2d 191; see *Werdell v. Turzynski* (1970), 128 Ill. App. 2d 139, 262 N.E.2d 833.) An accused cannot interject an issue into a case and then argue that it was error to bring the issue to the jury's attention. *People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26.

The case of *People v. Lewis* (1977), 52 Ill. App. 3d 477, 367 N.E.2d 710, presents an analogous situation. In *Lewis*, the defendant was accused of the unlawful sale of heroin on June 3, 1971. During the cross-examination of a State witness, defense counsel attempted to impeach the witness' testimony by use of allegedly inconsistent statements made previously. The prior statement, however, referred to two separate transactions, one which occurred on June 2, 1971, and the other which occurred on June 3, 1971. It was the State's position that the allegedly

inconsistent statement did not refer to the June 3 transaction, but rather to a different sale which occurred on June 2. As a result, the State was allowed (over a defense objection) on redirect examination to refer to both heroin sales to explain the prior statement and to demonstrate that the witness was not lying because the statement referred to by defense counsel was actually for a different sale. In holding that the trial court ruled correctly in permitting the State to refer to the June 2 sale on redirect, the *Lewis* court stated:

> "* * * defendant was not entitled to select portions of the statement to suit his purposes if the statement, when taken as a whole, conveyed a different meaning. We do not question the defendant's right to use this statement in an effort to impeach the witness by a prior inconsistent statement. But when the defendant brought portions of the statement to the attention of the jury when he attempted to impeach the witness by reference to isolated answers from the extrajudicial statement, the State was entitled to rehabilitate the credibility of the witness by showing that there was nothing inconsistent about the statement because it was made with reference to an incident different from the one defendant had testified to on direct examination." (52 Ill. App. 3d 477, 486, 367 N.E.2d 710, 715-16.)

The only question remaining, in our view, is whether or not it was necessary for the prosecution to disclose the existence of the citizen complaint made on December 3, 1976, to rebut the matters suggesting fabrication which were revealed on cross-examination. We are aware that the holding of the *Lewis* court was carefully circumscribed to the facts of that case, the court stating:

> "We think it is important to note that the prosecution's questions on redirect were carefully directed toward establishing the context in which the alleged inconsistent statement occurred. Once the defendant opened the door, the State was entitled to refer to other criminal misconduct, but only to the limited extent necessary to explain or rebut defendant's attempted impeachment. The entire redirect examination of this witness, as reflected by the record, was limited to refuting the impeaching effect of defendant's cross-examination and defendant can not now claim error." 52 Ill. App. 3d 477, 486, 367 N.E.2d 710, 716.

Under the circumstances presented in the case at bar, we believe that the court did not err in permitting the prosecutor to establish that the investigation was commenced as a result of a citizen complaint. The State was clearly entitled to attempt to rebut a charge of fabrication by demonstrating that the investigation was prompted by the report of an earlier attempt burglary in which defendant may or may not have been

involved. We recognize that these matters are collateral at best; however, the evidence of other burglaries was initially introduced by defendant and he cannot now claim prejudice.

The argument that the arresting officer's testimony was inadmissible hearsay may be summarily disposed of. " 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741 (quoting McCormick, Evidence §225 (1954).) However, where the out-of-court statement is not introduced for proving the truth of the matter asserted, but rather for some other valid purpose, the statement is not inadmissible as hearsay. Here, the arresting officer's testimony was not used to prove that a burglary occurred on December 3, 1976, but merely to show that the statements testified to were made. Hence, the statement was not hearsay and not inadmissible for that reason.

For the reasons stated above, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and WOODWARD, JJ., concur.