THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TONYA BAINS, Defendant-Appellee.

Fourth District   No. 4—86—0481

Opinion filed February 24, 1987.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James A. Sergey, of Student's Legal Services, of Normal, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On April 23, 1986, defendant, Tonya Bains, was arrested for the offense of driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)), and her driver's license was subsequently summarily suspended pursuant to provisions of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). On May 23, 1986, defendant filed a petition to rescind the suspension in the circuit court of McLean County, and, following a hearing, the court granted defendant's petition on July 11, 1986. The State appeals. The question is a close and complicated one. However, we reverse.

Section 11—501.1(a) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a)) provides that motorists using public highways of this State consent to submit to certain chemical tests upon their arrest for certain offenses involving drunk driving. The tests are to be administered at the direction of "the arresting officer." Section 11—501.1(c) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(c)) provides for a summary suspension of the arrested driver's license if that driver refuses a test or takes a test which indicates that the driver's breath or blood had an alcohol concentration of 0.10 or greater. Section 2—118.1(b) of the Illinois Vehicle Code sets forth the procedure for a hearing when a person seeks to rescind a statutory summary driver's license suspension and provides in part:

"The scope of the hearing shall be limited to the issues of:

1. Whether the person was placed under arrest for an offense as defined in Section 11—501, or a similar provision of a local ordinance, as evidenced by the issuance of a Uniform Traffic Ticket; and

2. Whether the *arresting officer* had reasonable grounds to

believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol, other drug, or combination thereof; and

3. Whether such person, after being advised by the *arresting officer* that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete such test or tests to determine the person's alcohol or drug concentration; or

4. Whether the person, after being advised by the *arresting officer* that the privilege to operate a motor vehicle would be suspended if the person submits to a chemical test, or tests, and such test discloses an alcohol concentration of 0.10 or more, and such person did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).

Evidence introduced at the hearing indicated that Officer John Clingon, a Normal, Illinois, police officer, arrested defendant for the offense of driving under the influence of alcohol in Bloomington, Illinois, where Officer Clingon had gone to investigate a runaway case. The trial court found that Officer Clingon did not make the arrest in his capacity as a police officer, but as a private citizen. (Ill. Rev. Stat. 1985, ch. 38, par. 107—3.) The court concluded that because Officer Clingon had acted as a private citizen, he lacked the authority to administer the breathalyzer test because he was not an "arresting officer" within the meaning of sections 2—118.1(b) and 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, pars. 2—118.1(b), 11—501.1) and, accordingly, ordered the rescission of the suspension of defendant's driver's license.

Under the common law, peace officers generally lacked the authority to make warrantless arrests outside the territorial limits of the political entity by which they were employed unless they were in hot pursuit of a suspected felon fleeing from their own territory. (*People v. Marino* (1980), 80 Ill. App. 3d 657, 661, 400 N.E.2d 491, 494.) This common law rule has been modified in part by sections 7—4—7 and 7—4—8 of the Illinois Municipal Code, which provide:

"The territory which is embraced within the corporate limits of adjoining municipalities within any county in this State shall be a police district." Ill. Rev. Stat. 1985, ch. 24, par. 7—4—7.

"The police of any municipality in such a police district may go into any part of the district to suppress a riot, to preserve

the peace, and to protect the lives, rights, and property of citizens. For these purposes the mayor of any municipality in the district, and the chiefs of police therein, shall use the police forces under their control anywhere in the district." Ill. Rev. Stat. 1985, ch. 24, par. 7—4—8.

Defendant argues that because Officer Clingon did not go into Bloomington on the night of her arrest for any of the purposes set forth in section 7—4—8, that section did not give Officer Clingon authority to make the arrest in his capacity as a peace officer. She maintains that the proper procedure here would have been for Officer Clingon to have detained her after making a citizen's arrest and to have held her until a police officer from Bloomington could be summoned to make an officer's arrest and take her to the Bloomington police station for tests in regard to her alleged intoxication.

Defendant's theory of the appropriate procedure was based upon the decision of the first district in *People v. Lawson* (1976), 36 Ill. App. 3d 767, 345 N.E.2d 41, where a conviction of unlawful use of weapons was affirmed on appeal. There, the defendant contended that two Chicago police officers had no legal authority to arrest and search him in Evanston, a municipality adjoining Chicago. The two officers had been eating in an Evanston restaurant when they were approached by an unidentified man who told them that the defendant, who was sitting at the counter, was intoxicated and apparently in possession of a gun. The officers, who were in uniform, questioned that defendant and then told him to keep his hands where they could be seen. They then took the gun from his belt. One of the officers testified that they did not tell that defendant he was under arrest but that he would not have been permitted to leave had he attempted to do so. One of the officers then telephoned the Evanston police, who later arrived on the scene and took that defendant into their custody. The trial court upheld the seizure.

The *Lawson* opinion stated that the intrusion which the Chicago officers made upon the freedom of that defendant did not amount to an arrest. Moreover, the court concluded, even if an arrest had been made, it was one that private citizens would be authorized to make because they would have probable cause to believe that the defendant was committing a crime. (Ill. Rev. Stat. 1973, ch. 38, par. 107—3.) The court then addressed the issue of the propriety of Chicago police officers taking police action in Evanston. The court deemed the danger presented by the intoxicated defendant possessed with a gun to satisfy the protection-of-the-public-safety element of section 7—4—8 which purports to authorize action by police officers throughout their

district. The court determined that this was so even though the officers had not entered Evanston for the purpose of protecting the public safety. The court also stated:

"It would be ludicrous to construe this statute [section 7—4—8] to require the police officers in the situation here disclosed to seek authority to investigate the situation from the mayor of Evanston or Chicago, or from one of the chiefs of police." *People v. Lawson* (1976), 36 Ill. App. 3d 767, 773, 345 N.E.2d 41, 45.

In *People v. Harvey* (1964), 48 Ill. App. 2d 261, 199 N.E.2d 236, cited in *Lawson*, a defendant contended that a consensual search of premises in Bridgeview by Chicago police was improper because the Chicago officers were operating beyond city limits. The first district held that the conduct of the officers was proper because Bridgeview and Chicago were in the same police district as described in section 7—4—7 and the search was made to "protect the property taken in the commission of a crime." (48 Ill. App. 2d 261, 266, 199 N.E.2d 236, 239.) The stated purpose of protecting property apparently had reference to the use of the word "property" in section 7—4—8 (Ill. Rev. Stat. 1963, ch. 24, par. 7—4—8).

The *Lawson* decision is supportive of defendant's position so far as she argues that a better procedure would have been for Clingon to have taken defendant to a Bloomington police station and surrendered her to police there. However, under defendant's interpretation of the various statutory provisions involved, defendant would have to be discharged from custody for at least a short period of time so that a re-arrest could be made by a Bloomington police officer who would then become an "arresting officer" who would be authorized to request the tests, advise defendant as to the consequences of her response to the request, and administer the giving of the tests. Notably, section 11—501.1(a) of the Code provides that "[t]he law enforcement agency employing said [arresting] officer shall designate which of the aforesaid tests shall be administered." (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a).) The evidence indicated that Clingon took defendant back to the Normal police station and administered the tests there. He likely did so to avoid a contention that tests not designated by his employer were given.

In any event, *Lawson* does not support defendant's contention that Clingon was without authority under section 7—4—8 to arrest her in his capacity as a police officer. The evidence indicated that she, like the defendant in *Lawson*, appeared to be intoxicated. There, the defendant was dangerous to the public when intoxicated because he

was carrying a gun. Here, defendant appeared to be dangerous to the public when intoxicated because she was driving a motor vehicle. In both cases, emergency action was required. While Clingon had not entered Bloomington for the purpose of arresting drunk drivers, the Chicago officers in *Lawson* had not entered Evanston to protect the public from intoxicated persons with guns. In neither case did the officers enter the adjoining municipality at the request of officials of that municipality. According to *Lawson* neither such a purpose nor such a request was necessary to trigger the protection-of-the-public-safety element of section 7—4—8.

This court has previously refrained from passing upon the extent of the operation of sections 7—4—7 and 7—4—8. (*People v. Rowe* (1984), 128 Ill. App. 3d 721, 471 N.E.2d 578.) We now hold that by the combined terms of sections 7—4—7 and 7—4—8, when such an officer enters another municipality in the same district and finds it necessary to act in order "to suppress a riot, to preserve the peace [or, as here], and to protect the *lives, rights, and property of citizens,*" that officer may act in his official capacity. (Emphasis added.) Ill. Rev. Stat. 1985, ch. 24, par. 7—4—8.

Under our interpretation of sections 7—4—7 and 7—4—8, the additional authority thereby given to municipal officers while in adjoining municipalities is not great. Even without these provisions, those officers can make citizen's arrests upon view. (*People v. Rowe* (1984), 128 Ill. App. 3d 721, 471 N.E.2d 578.) They can go throughout the State to execute warrants (*People v. Carnivale* (1975), 61 Ill. 2d 57, 329 N.E.2d 193) and can make warrantless arrests while in hot pursuit (*People v. Marino* (1980), 80 Ill. App. 3d 657, 400 N.E.2d 491). Here, Clingon admittedly had authority to arrest defendant. In this case, the only effect of our interpretation of sections 7—4—7 and 7—4—8 is to eliminate uncertainty as to the procedure that is required in enforcing laws designed to protect the public from drunk drivers. Section 7—4—8 is triggered when officers are confronted with riots, a substantial disruption of the peace, or an indication of danger to the rights, property, or, as here, the lives of people. In such circumstances, the officer from the adjoining municipality has the power of a police officer.

We recognize and respect the concern of the trial court and of the defendant to follow the letter of the provisions of the Illinois Vehicle Code when arrest is made by a police officer not employed by the unit of government in which the arrest is made. However, we agree with the statements of the first district in *People v. Gupton* (1985), 139 Ill. App. 3d 530, 487 N.E.2d 1060, and the second district in *People v.*

*Porretta* (1984), 127 Ill. App. 3d 572, 469 N.E.2d 314, that the statutory provisions in regard to the motorist's implied consent to testing should be given a liberal construction in order to protect the citizens of the State on its highways.

No question is raised as to the sufficiency of the evidence to otherwise require the summary suspension of defendant's driving privileges be upheld. Accordingly, we reverse the order of the circuit court of McLean County.

Reversed.

SPITZ, P.J., and McCULLOUGH, J., concur.