THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOHN O'CONNOR, Defendant-Appellee.

First District (2nd Division)   No. 86—1939

Opinion filed March 1, 1988.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Penelope Moutoussamy, Assistant State's Attorneys, of counsel), for the People.

Edward T. Graney and Robert Carrillo, both of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

The trial court sustained the motion of defendant, John O'Connor, to quash his arrest and to suppress the evidence seized as a result of his arrest. The State appeals contending that the arrest was valid. We reverse and remand.

At 1:22 a.m. on March 21, 1986, Officer Taylor of the Palos Park police department was using radar equipment to monitor the flow of traffic on Route 45 located within Palos Park. His point of observation was a parking lot located on the west side of Route 45. Although Palos Park police were responsible for north and southbound traffic control on Route 45, Officer Taylor's vantage point was located in an unincorporated area which was the responsibility of the Cook County sheriff's police. From his observation point Officer Taylor saw the defendant speeding southbound on Route 45 within the jurisdiction of Palos Park. Officer Taylor then drove into Palos Park, and pursuant to his direction defendant stopped his vehicle. Defendant was then arrested in Palos Park and charged with driving under the influence of alcohol, speeding and having a blood-alcohol content greater than .10.

At the hearing on the motion to quash and suppress, defendant elicited testimony that Officer Taylor conducted his radar surveillance from a point just across the Palos Park border. The trial court granted defendant's motion on the ground that Officer Taylor was not within Palos Park when he observed defendant speeding and driving under the influence of alcohol.

The issue is whether an intraterritorial arrest is invalidated because of the arresting officer's extraterritorial location when he observed defendant speeding and driving while intoxicated within the officer's jurisdiction (Palos Park). The State contends that decisions upholding extraterritorial arrests establish the propriety of the instant intraterritorial arrest either because Officer Taylor properly exercised extraterritorial statutory authority conferred by sections 7—4—7 and 7—4—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, pars. 7—4—7, 7—4—8) or by section 107—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 107—5(c)) or was authorized to make a citizen's arrest pursuant to section 107—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 107—3). For the following reasons, defendant contends that the authority cited by the State is inapplicable to the instant arrest: sections 7—4—7 and 7—4—8 of the Illinois Municipal Code cannot sustain the arrest because Officer Taylor positioned himself in an adjoining unincorporated area rather than an adjoining municipality; section 107—5(c), while authorizing arrests throughout the State, does not support the instant arrest because Officer Taylor left his jurisdiction to set up an extraterritorial radar site without knowing whether any violations would occur; and section 107—3 does not authorize a citizen's arrest because police, not private citizens, use radar to monitor traffic.

Sections 7—4—7 and 7—4—8 of the Illinois Municipal Code provide that adjoining municipalities within a county form a police district and that the police of any municipality within the district may go throughout the district to preserve the peace and safeguard the lives, rights and property of citizens. Extraterritorial arrests have been upheld pursuant to these provisions where officers while in adjoining municipalities observed the commission of offenses. (*People v. Bains* (1987), 152 Ill. App. 3d 951, 505 N.E.2d 13 (motorist observed driving under the influence of alcohol in Bloomington was arrested in Bloomington by a Normal police officer); *People v. Lawson* (1976), 36 Ill. App. 3d 767, 345 N.E.2d 41 (Chicago police officers while in Evanston arrested a man who was intoxicated and carrying a concealed weapon).) These provisions mandate the cooperation of adjoining municipalities within a county to promote cohesive law enforcement in

emergency situations regardless of whether interjurisdictional agreements for this purpose exist. (*Lawson*, 36 Ill. App. 3d 767, 345 N.E.2d 41.) No specific provision was made by the legislature for municipal and county cooperation with regard to adjoining unincorporated areas. Thus, had the instant arrest been made outside of Officer Taylor's jurisdiction, it could not be sustained pursuant to sections 7—4—7 or 7—4—8. See *People v. Gupton* (1985), 139 Ill. App. 3d 530, 487 N.E.2d 1060.

■ Section 107—5(c) of the Code of Criminal Procedure, however, is broader in scope and provides that arrests may be made anywhere within the State. Extraterritorial arrests have been upheld pursuant to this provision where the arresting officer had probable cause to believe that defendant had committed an offense within the officer's jurisdiction. (*People v. Aldridge* (1981), 101 Ill. App. 3d 181, 427 N.E.2d 1001 (arrest in Chicago by Evanston police for rape occurring in Evanston); *People v. Durham* (1979), 71 Ill. App. 3d 725, 390 N.E.2d 517 (arrest in Alexander County by Union County sheriff's office for aggravated assault, armed violence, unlawful use of weapons and criminal damage to property valued less than $150).) The common law "hot pursuit" doctrine similarly upholds extraterritorial arrests in which the police from the jurisdiction where the offense took place immediately pursue the fleeing perpetrators into another jurisdiction. (*People v. Clark* (1977), 46 Ill. App. 3d 240, 360 N.E.2d 1160 (arrest in Missouri by Cairo police for armed robbery occurring in Illinois).) Defendant contends that in each case where the arrest was upheld pursuant to section 107—5(c), the officer had some knowledge, if not probable cause to believe, that the accused had committed an offense within his jurisdiction prior to leaving it and that such authority cannot sustain the arrest here because Officer Taylor had no basis to believe any offense would be committed prior to leaving his jurisdiction. These decisions address circumstances where the authority to make an extraterritorial arrest is at issue. In such circumstances the basis upon which the accused was pursued into another jurisdiction is a relevant consideration. Here, however, a radar sweep was conducted on a roadway within Officer Taylor's jurisdiction. Going to an adjoining jurisdiction under such circumstances does not, in our opinion, operate to prohibit the officer from acting intraterritorially based on his extraterritorial observation of the commission of an offense.

■ Section 107—3 of the Code of Criminal Procedure authorizes a private citizen to make an arrest when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed. Extraterritorial arrests by police officers have been upheld as

citizen's arrests where the offense was committed in the officer's presence. (*People v. Gupton* (1985), 139 Ill. App. 3d 530, 487 N.E.2d 1060 (arrest in unincorporated area of Cook County by Glencoe police for driving in the wrong lane and under the influence of alcohol while in the unincorporated area); *People v. Rowe* (1984), 128 Ill. App. 3d 721, 471 N.E.2d 578 (arrest in Jacksonville by South Jacksonville police for improper lane usage and driving under the influence of alcohol occurring in Jacksonville); *People v. Marino* (1980), 80 Ill. App. 3d 657, 400 N.E.2d 491 (arrest in Wood Dale by Chicago police for burglary occurring in Wood Dale).) In Illinois, extraterritorial arrests are not invalidated because they are made under color of authority. (*Gupton*, 139 Ill. App. 3d 530, 487 N.E.2d 1060; *Rowe*, 128 Ill. App. 3d 721, 471 N.E.2d 578; *Marino*, 80 Ill. App. 3d 657, 400 N.E.2d 491.) Moreover, the results of a breathalyzer test, which was requested under color of law in association with a citizen's arrest, have been held to be admissible. *Gupton*, 139 Ill. App. 3d 530, 487 N.E.2d 1060; *Rowe*, 128 Ill. App. 3d 721, 471 N.E.2d 578.

Both sections 107—3 and 107—5(c) of the Code of Criminal Procedure have been held to authorize extraterritorial arrests, made in either an official or citizen's capacity, where the officer observed the commission of the offense while outside of his jurisdiction. Accordingly, had the boundary line between Palos Park and the unincorporated area been the center of Route 45 and defendant been arrested in the unincorporated area, the extraterritorial arrest would have been sustained either in Officer Taylor's official capacity (*Aldridge*, 101 Ill. App. 3d 181, 427 N.E.2d 1001; *Durham*, 71 Ill. App. 3d 725, 390 N.E.2d 517) or as a private citizen's arrest (*Gupton*, 139 Ill. App. 3d 530, 487 N.E.2d 1060). Consequently, it would be anomalous to quash the instant intraterritorial arrest.

■ While no Illinois cases have been found which have dealt with extraterritorial surveillance or information gathering distinct from making an extraterritorial arrest, the matter has arisen in other jurisdictions. In *Phoenix v. State* (Fla. 1984), 455 So. 2d 1024, the Martin County sheriff's office followed a suspicious vehicle into St. Lucie County and then lost sight of it. Noting the recent removal and replacement of a lock on a gate at the approach to a ranch which could be used as an air strip for smugglers, the officers conducted a five-hour aerial and surface surveillance of the ranch. When two vehicles left the ranch, the Martin County officers pursued and stopped one vehicle in St. Lucie County and the other in Martin County. Inasmuch as the officers did not extraterritorially assert the power of their office to gain access to evidence not available to the private citizen, the

test of the legality of the warrantless arrests in both St. Lucie and Martin Counties was held to be the sheriff's ability to demonstrate probable cause without regard to whether the underlying information was gathered intra- or extraterritorially. This rule was also adopted in *People v. Meyer* (1985), 424 Mich. 143, 379 N.W.2d 59, where a plainclothes police officer made a drug buy outside of his municipality. Defendant contended that the investigating officer was precluded from signing a felony complaint or testifying against him based on information gathered extraterritorially. This argument was rejected because the officer did not assert the authority of his office to gain access to information unavailable to private citizens. In circumstances other than the requests for chemical testing which have been upheld in *People v. Gupton* and *People v. Rowe*, the extraterritorial assertion of authority may be viewed as tainting the use of information gathered. However, the surveillance done here was of a roadway within Officer Taylor's jurisdiction. The use of radar equipment under such circumstances, like the use of surveillance aircraft, police vehicles and radios in *Phoenix v. State* and undercover procedures in *People v. Meyer*, does not, in our opinion, constitute an impermissible assertion of extraterritorial power which could preclude the use of the information gathered. Consequently, a finding of extraterritorial authority to monitor the roadway pursuant to sections 7—4—7 or 7—4—8 of the Illinois Municipal Code or sections 107—3 or 107—5(c) of the Code of Criminal Procedure is unnecessary.

■ As noted in *People v. Durham* and *Phoenix v. State*, the crucial analysis to be applied to determine the propriety of a warrantless arrest is whether probable cause can be demonstrated. The pertinent inquiry then is whether probable cause can be found where the underlying facts and circumstances were observed while a police officer was outside of his jurisdiction. Probable cause for a warrantless arrest exists where the arresting officer, based on reasonable and trustworthy information, has knowledge of facts and circumstances sufficient to warrant a man of reasonable caution in believing that an offense had been committed and that defendant is the offender. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Fletcher* (1978), 66 Ill. App. 3d 502, 383 N.E.2d 1285.) The United States Supreme Court noted in *Draper* that " '[i]n dealing with probable cause, *** as the very name implies, we deal with probabilities. These are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' " (358 U.S. at 313, 3 L. Ed. 2d at 332, 79 S. Ct. at 333, quoting *Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S.

Ct. 1302, 1313.) In *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, information concerning the purchase, sale and transportation of drugs between Florida and Illinois was first brought to the attention of the police of a Chicago suburb in Du Page County by an anonymous letter. As a result of an investigation of Chicago sources, a suburban police officer learned that one of the suspects had a reservation on a flight to Florida and arranged for on-board and ground surveillance in Florida by a Federal drug enforcement agent. Based on information from multiple sources gathered in various locations, including the anonymous letter, the information gathered in the Chicago inquiry, results of out-of-State surveillance, and the suburban officer's intraterritorial surveillance of defendants, a search warrant was obtained. In upholding the issuance of the warrant, the Supreme Court found that probable cause had been established by applying the "totality-of-the-circumstances" approach which looked to all the facts and circumstances to determine whether the information was accurate and reliable. It was the accuracy and reliability of the information, not the locations where it was gathered, which was paramount.

Here, so long as Officer Taylor's opportunity to observe was unimpeded, the fact that his vantage point was extraterritorial did not diminish the accuracy or reliability of the information gathered. Stationing himself on the edge of a roadway for which he had complete patrol responsibility, even though that edge also served as a territorial boundary, was reasonable under the facts and circumstances presented here. Furthermore, as noted previously, since the information was not obtained by the assertion of Officer Taylor's authority as a law enforcement officer, a finding of extraterritorial authority to gather evidence under sections 7—4—7 or 7—4—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, pars. 7—4—7, 7—4—8) or sections 107—3 or 107—5(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, pars. 107—3, 107—5(c)) is unnecessary. Consequently, we find that the trial court's granting defendant's motion to quash the arrest and suppress the evidence obtained as a result of the arrest was erroneous.

In light of the foregoing, the judgment of the circuit court of Cook County is reversed, and the cause is remanded.

Reversed and remanded.

BILANDIC and SCARIANO, JJ., concur.