23070

The STATE, Respondent v. Georgina Catrina HARRIS, Appellant.

(382 S. E. (2d) 925)

Supreme Court

*Asst. Appellate Defender Joseph L. Savitz, III, Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia; and *Sol. James O. Dunn,* Conway, *for respondent.*

Heard March 7, 1989.

Decided Aug. 21, 1989.

CHANDLER, Justice:

Appellant (Harris) was convicted of distributing cocaine. We affirm.

On January 16, 1988, North Myrtle Beach narcotics agents Wade and Gallant met with two informants, one of whom they equipped with an electronic transmitter. The informants then drove to Atlantic Beach to purchase cocaine from Harris, a suspected dealer in drugs. As Officer Wade monitored their conversations, the informants located Harris at an Atlantic Beach motel. They then drove her to a location where she obtained cocaine which she, in turn, sold to the informants.

The informants returned to North Myrtle Beach with the drugs. At Officer Wade's request, they returned to Atlantic Beach and persuaded Harris to accompany them to North Myrtle Beach. Meanwhile, Officer Wade obtained a warrant and arrested Harris upon her arrival in North Myrtle Beach.

At trial, Harris moved to dismiss the drug charge, arguing that the North Myrtle Beach police officers lacked authority to conduct an undercover operation in Atlantic Beach. Specifically, she contended the officers failed to comply with S. C. Code Ann. § 5-7-120 (Supp. 1988), which provides that "[t]he governing body of any municipality may upon the request of the governing body of any other political subdivision of the State, send any law enforcement officers to such requesting political subdivision in cases of emergency." Upon the parties' stipulation that the officers had operated with the oral consent of the Atlantic Beach Chief of Police, the trial judge denied the motion.

## ISSUE

The sole question here is whether the undercover operation conducted by the North Myrtle Beach police officers was lawful.

## DISCUSSION

Harris contends that, since the requirements of the statute were not satisfied, the officers were without authority to conduct the undercover operation, mandating a reversal of her conviction.

We agree that § 5-7-120 was not complied with, in that no request was made by the governing body of the Town of Atlantic Beach, nor was this an emergency situation. However, the officers' actions were proper, apart from the statute.

The jurisdiction of a municipal police officer, absent statutory authority, generally does not extend beyond the territorial limits of the municipality.[1] 62 C. J. S. *Municipal Corporations* § 574, p. 1108 (1949 & Supp. 1988). This does not, however, affect an officer's right to act as a private citizen beyond his jurisdiction. In such case, his actions are lawful if they could be properly undertaken by an ordinary citizen. *See, e.g., People v. O'Connor,* 167 Ill. App. (3d) 42, 117 Ill. Dec. 730, 520 N. E. (2d) 1081 (1988) [surveillance]; *People v. Meyer,* 424 Mich. 143, 379 N. W. (2d) 59 (1985) [undercover drug buy]; *Guthrie v. State,* 668 P. (2d) 1147 (Okla. Crim. App. 1983) [information gathering]; *Meadows v. State,* 655 P. (2d) 556 (Okla. Crim. App. 1982) [undercover drug buy].

Here, the officers' only activity outside North Myrtle Beach was the monitoring of conversations between the informants and Harris, which could have been done by private citizens. The fact that they planned the drug buy operation while in North Myrtle Beach does not affect the validity of their actions. *See People v. Meyer, supra; Meadows v. State, supra.*[2]

---

[1] In addition to § 5-7-120, statutory exceptions to the general rule are found in: S. C. Code Ann. § 5-7-110 (1976) [contracting for police protection beyond the corporate limits]; S. C. Code Ann. § 17-13-40 (1985) [police in pursuit arresting within three mile radius of municipality]; S. C. Code Ann. § 23-1-215 (1989) [criminal investigation in other county or municipality by agreement of law enforcement agencies involved].

[2] In *Meyer,* a municipal police officer telephoned the defendant to arrange a purchase of drugs, then made an undercover buy at the defendant's apartment in another city. The Michigan Supreme Court reversed the dismissal of drug charges against the defendant, notwithstanding the officer's violation of a statute comparable to § 5-7-120.

Accordingly, we hold that the undercover operation was lawful.

Affirmed.

GREGORY, C. J., and HARWELL, J., concur.

FINNEY and TOAL, JJ., dissent in separate opinion.

FINNEY, Justice:

I respectfully dissent. It is my view that the undercover operation was unlawful because at all times during the extra-jurisdictional operation, the agents were acting in their official capacity as officers of the North Myrtle Beach Police Department (Department), in utter disregard of the mandates of S. C. Code Ann. § 5-7-120 (Supp. 1988).

The majority correctly concludes that these officers did not comply with Section 5-7-120, but holds that this extra-jurisdictional action is permissible because it would have been lawful if undertaken by private citizens. The majority opinion cites statutory exceptions, which do not apply to the facts herein, and relies on the cases of *People v. O'Connor*, 167 Ill. App. (3d) 42, 117 Ill. Dec. 730, 520 N. E. (2d) 1081 (1988); *People v. Meyer*, 424 Mich. 143, 379 N. W. (2d) 59 (1985); *Guthrie v. State*, 668 P. (2d) 1147 (Okla. Crim. App. 1983); and *Meadows v. State*, 655 P. (2d) 556 (Okla. Crim. App. 1982), each of which is distinguishable from the instant case.

In this case, Officer Wade, acting with the avowed intent to "get Georgina Harris," met with two informants who were paid by the Department, provided them with Department money to purchase narcotics, wired one informant with an electronic body transmitter provided by the Department, and instructed the informants to go to Atlantic Beach and purchase drugs from the appellant. Officer Wade waited in North Myrtle Beach, monitoring the conversations between the informants and the appellant by radio in a vehicle, both of which were owned by the Department. When the

---

In *Meadows*, an undercover narcotics officer established a drug contact, then drove with him to another city where they purchased drugs from the defendant. The Oklahoma Court of Criminal Appeals affirmed the defendant's conviction, upholding the officer's authority as a private citizen.

informants returned to North Myrtle Beach, Wade instructed them to return to Atlantic Beach and, by subterfuge, get the appellant into North Myrtle Beach, where Officer Wade subsequently effectuated her arrest under a warrant he had obtained in the interim.

The majority asserts that the officers' only activity outside North Myrtle Beach was the monitoring of conversations between the informants and the appellant, which could have been done by private citizens, and states further that the validity of the officers' actions is not affected by the fact that the operation was planned in North Myrtle Beach.

To the contrary, the record shows this as a carefully orchestrated reconnaissance mission continuing to its planned conclusion in the arrest of a specific individual at a designated location through the use of police personnel and Department-paid informants acting at the behest of the officers, who utilized Department resources not likely to be available to private citizens. I would hold that the foregoing, when considered with the fact that the scheme provided for the appellant to be lured into North Myrtle Beach to be arrested by North Myrtle Beach officers, would support a finding that the officers were acting under color of law.

In both *Meyer, supra,* and *Meadows, supra,* the police officers maintained their identity as private citizens to purchase drugs from the defendants then provided the information from their undercover operation to the police department in whose jurisdiction the transactions occurred. *Guthrie, supra,* addresses the validity of a search warrant on affidavit of a police officer whose actions were at all times consonant with his status as a private citizen. In *O'Connor, supra,* an officer positioned outside his jurisdiction was conducting a general highway speed surveillance of traffic on a roadway within his jurisdiction when he arrested the defendant for an offense committed in the officer's presence.

In the instant case, the officers' course of conduct shows a pattern or practice violative of clear legislative intent, makes a mockery of Section 5-7-120, borders on entrapment, and constitutes an abuse of orderly police process in the face of viable legal options available to conclude the apprehen-

sion and arrest of the appellant.[1] Had these officers followed either of these procedures, they may not have improved their arrest record,[2] but surely would have assisted in the orderly removal from the street of a person whom they considered to be a menace.

Under the majority opinion, it would be possible for officers of the Atlantic Beach Police Department, *sua sponte*, to conduct an investigation into activities being carried on in any other jurisdiction without complying with Section 5-7-120. Such a scenario, in my view, would be disruptive of orderly process, lead to chaos in law enforcement, and violate clear legislative mandate.

I would hold that the undercover operation was unlawful and reverse this case.

TOAL, J., concurs.

---

[1] If the officers had information as to the reprehensible conduct of the appellant, they had three viable legal options: (a) give the information to the County Police; (b) give the information to the S. C. Law Enforcement Division; or (c) notify the Atlantic Beach Police Department and coordinate the arrest with that agency.

[2] The record is replete with evidence of one of the officer's zeal to arrest the appellant and inordinate pride in his arrest record.